**EXHIBIT 1**



**EXHIBIT 2**



**EXHIBIT 3**

AMERICAN HEROES EDITION
topps HERITAGE
TOPPS AMERICAN HERITAGE
TOPPS TRADING CARDS
AGES 6+

EXHIBIT 4



**EXHIBIT 5**

**American Heroism Relics: GROUP A:** Eleanor Roosevelt, World War II Bombing Map, Franklin D. Roosevelt/Eleanor Roosevelt, Lyndon B. Johnson, Jacqueline Kennedy, Franklin D. Roosevelt (Shirt), Franklin D. Roosevelt (Oval Office Floor), Harry S. Truman, USS Maine, Theodore Roosevelt, USS Missouri, Libby Prison, USS North Carolina, Civil War Enfield Musket; **GROUP B:** Spanish-American War Boots, Korean War Uniform, World War I Blanket, World War I Uniform, World War I Signal Flag, World War I Flag Kit, World War II Paratrooper Uniform, World War II Medic's Uniform, D-Day Veteran's World War II Uniform, World War II Captain's Uniform, World War II POW's Uniform, World War II Uniform, World War II Paratrooper's Uniform; **GROUP C:** World War I Leggings.

**Heroes of Spaceflight Relics: GROUP A:** Apollo 11 Command Module Thermal Protection, Apollo-Soyuz Test Project Command Module Thermal Protection, Space Shuttle Atlantis Orbiter Payload Bay Liner (7 Versions), Space Shuttle Columbia Orbiter Payload Bay Liner (7 Versions), Space Shuttle Discovery Orbiter Payload Bay Liner (7 Versions), Space Shuttle Endeavour Orbiter Payload Bay Liner (7 Versions); **GROUP B:** Space Shuttle Columbia Orbiter Payload Bay Thermal Blanket, Space Shuttle Discovery Orbiter Payload Bay Thermal Blanket, Space Shuttle Atlantis Orbiter Payload Bay Thermal Blanket, Space Shuttle Endeavour Orbiter Payload Bay Thermal Blanket, Space Shuttle Discovery Orbiter Payload Bay Clamp Seal, Apollo 15 Guidance and Navigation Chip, Spacelab Wiring.

**American Heroes Relics: GROUP A:** John Flynn, David Lin, Robert Jarvik, Col. Bud Day, Justin Garner, Det. Frank Serpico, Erin Brockovich, Col. Gordon R. Roberts, John Moran, Dennis Smith, John Finn; **GROUP B:** Wesley Autry, Shana (Bedding), Shana (Leash).

These lists are subject to change.







**American Heroism Relics: GROUP A:** Eleanor Roosevelt, World War II Bombing Map, Franklin D. Roosevelt (Eleanor Roosevelt, Lyndon B. Johnson, Jacqueline Kennedy, Franklin D. Roosevelt (Shirt), Franklin D. Roosevelt (Oval Office Floor), Harry S. Truman, USS Maine, Theodore Roosevelt, USS Missouri, Libby Prison, USS North Carolina, Civil War Enfield Musket; **GROUP B:** Spanish-American War Boots, Korean War Uniform, World War I Blanket, World War I Uniform, World War I Signal Flag, World War I Flag Kit, World War I Paratrooper Uniform, World War II Medic's Uniform, D-Day Veteran's World War I Uniform, World War II Captain's Uniform, World War II POW's Uniform, World War II Uniform, World War II Paratrooper's Uniform; **GROUP C:** World War I Leggings.

**Heroes of Spaceflight Relics: GROUP A:** Apollo 11 Command Module Thermal Protection, Apollo-Soyuz Test Project Command Module Thermal Protection, Space Shuttle Atlantis Orbiter Payload Bay Liner (7 Versions), Space Shuttle Columbia Orbiter Payload Bay Liner (7 Versions), Space Shuttle Discovery Orbiter Payload Bay Liner (7 Versions), Space Shuttle Endeavour Orbiter Payload Bay Liner (7 Versions); **GROUP B:** Space Shuttle Columbia Orbiter Payload Bay Thermal Blanket, Space Shuttle Discovery Orbiter Payload Bay Thermal Blanket, Space Shuttle Atlantis Orbiter Payload Bay Thermal Blanket, Space Shuttle Endeavour Orbiter Payload Bay Thermal Blanket, Space Shuttle Payload Bay Blanket; **GROUP C:** Space Shuttle Discovery Orbiter Payload Bay Clamp Seal, Apollo 15 Guidance and Navigation Chip, Spacelab Wiring.

**American Heroes Relics: GROUP A:** John Flynn, David Lim, Robert Jarvik, Col. Bud Day, Justin Garner, Det. Frank Serpico, Erin Brockovich, Col. Gordon R. Roberts, John Moran, Dennis Smith, John Finn; **GROUP B:** Wesley Autry, Shana (Bedding), Shana (Leash).

These lists are subject to change.

**EXHIBIT  6**



Michael A. Kahn
Direct: (314) 259-2251
Fax: (314) 552-8251
mike.kahn@bryancave.com

April 15, 2010

Bryan Cave LLP
One Metropolitan Square
211 North Broadway
Suite 3600
St. Louis, MO 63102-2750
Tel (314) 259-2000
Fax (314) 259-2020
www.bryancave.com

**VIA E-MAIL**

Robert O'Brien
Partner
Arent Fox LLP
555 West Fifth Street, 48th Floor
Los Angeles, CA  90013

Re:     Dr. Buzz Aldrin and The Topps Company

Dear Robert:

Following up on our earlier exchange of emails and mindful of your travel schedule, I thought it might help both parties to summarize in writing the operative facts (to make sure we are in agreement on them) and the position of The Topps Company ("Topps") on Dr. Aldrin's demands.

1.     <u>The American Heritage: American Heroes Edition</u>

The Buzz Aldrin materials (described in § 2, below) are included within the TOPPS AMERICAN HERITAGE: AMERICAN HEROES edition (the "American Heroes edition"), which is described as follows:

> "The second release in the Topps American Heritage line, Topps American Heritage: American Heroes Edition celebrates those men and women who have helped to shape America through their courage, bravery, and dedication to the American ideal. Featuring over a hundred personalities from all walks and eras of American life – including politicians, humanitarians, scientists, diplomats, policemen, firemen, civil rights activists, explorers, and adventurers – Topps American Heritage: American Heroes Edition packs America's history and its greatest participants into every pack. Including autographs, relics, stamps, and cut signatures, Topps American Heritage: American Heroes Edition offers collectors a chance to own a piece of American history like never before."

There are 25 "Heroes of Spaceflight" in the American Heroes edition. They include John F. Kennedy,  Sally Ride, John Glenn, Deke Slayton and your client. There are other hero categories, including Civil Rights Heroes, Heroes of

Bryan Cave Offices
Atlanta
Charlotte
Chicago
Dallas
Hamburg
Hong Kong
Irvine
Jefferson City
Kansas City
London
Los Angeles
Milan
New York
Paris
Phoenix
San Francisco
Shanghai
St. Louis
Washington, DC

Bryan Cave International Trade
A TRADE CONSULTING SUBSIDIARY
OF NON-LAWYER PROFESSIONALS
www.bryancavetrade.com
Bangkok
Beijing
Jakarta
Kuala Lumpur
Manila
Shanghai
Singapore
Tokyo

Bryan Cave LLP

Robert O'Brien
April 15, 2010
Page 2

Medicine, and a Presidential Medal of Freedom group that includes Frank Sinatra, Ella Fitzgerald, Johnny Carson, Walter Cronkite, John Kenneth Galbraith and twenty-one other honorees. Altogether, there are well over one hundred American heroes featured in the series. *None has received any license fee or other compensation from Topps for their American Heroes card.*

2.      **The Aldrin Materials**

The name, image or autograph of Dr. Aldrin appears in the following places in the American Heroes series:

- The package of the trading card set includes images of three persons: an unidentified astronaut on the Moon above the caption "Moon Landing: Apollo 11," Abraham Lincoln's face above the caption "Abraham Lincoln" and Mickey Mantle's face above the caption "Mickey Mantle." The astronaut image is a NASA photograph. The faceplate of the astronaut's helmet is essentially a mirror reflecting the front of the moon landing vehicle resting on the surface of the moon. There is, in short, no personally identifiable feature of the astronaut, and, as noted above, the astronaut is not identified by name or even date. I am advised that this may be a photograph of Dr. Aldrin.

- Dr. Aldrin is identified by name in the accurate descriptive text on the back of the trading cards for Gemini XII and Apollo XI. His image or likeness does not appear.

- Dr. Aldrin is identified by name on the front and back of the one and only Heroes of Spaceflight card that includes an original "cut signature" of Dr. Aldrin. This is an original signature, and thus the only one, *i.e.*, this is not a reproduction of a signature. The front of the card states "Buzz Aldrin  Gemini XII, Apollo XI." The back of the card reads as follows:

<div align="center">

**HEROES OF SPACEFLIGHT**

**Gemini XII, Apollo XI**

**You Have Just Received An Authentic Cut Signature of**

**Buzz Aldrin**

**From The Topps American Heritage Collection**

———————————————————

**Topps pledges to bring you closer to American History and its greatest heroes.**

</div>

3354748.1

Bryan Cave LLP

Robert O'Brien
April 15, 2010
Page 3

## 3.  The Applicable Law

An analysis of Topps' position must begin with an acknowledgement of the unique First Amendment status of trading cards, which protect Topps' right to include a factual description of the historic events in which Dr. Aldrin participated.  As the Tenth Circuit explained in *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959, 969 (10th Cir. 1996) (emphasis added):

> "Moreover, even if less common mediums of expression were to receive less First Amendment protection (perhaps out of concern for whether they contain any expression at all), trading cards do not fall into that category. Baseball cards have been an important means of informing the public about baseball players for over a century. * * * In addition, non-sports trading cards have also been an important medium for disseminating information. Some recent examples feature topics such as saints, Norman Rockwell paintings, presidential candidates, the rise and fall of the Soviet Union, local police officers, and Rodney King. ***All of these trading cards, regardless of their topic, convey information about their subject and therefore constitute an important means of expression that deserves First Amendment protection.***"

In short, on the right-of-publicity continuum from pure commercial speech (such as a product endorsement by a former astronaut) to pure expressive speech (such as Tom Wolfe's book on the space program, *The Right Stuff*), the American Heroes edition is the trading cards equivalent of an American history textbook and is far closer to pure expressive speech then, say, the fact pattern in the Ninth Circuit's First Amendment ruling in *Hoffman v. Capital Cities/ABC, Inc.*, 255 F.3d 1180 (9th Cir. 2001).  As the *Hoffman* court emphasized, quoting Supreme Court precedent, "'[T]here are commonsense differences between speech that does no more than propose a commercial transaction and other varieties,' *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 771 n.24 (1976) (quotations and citation omitted), and common sense tells us this is not a simple advertisement." *Hoffman, supra.*

So, too, the American Heroes edition is protected under the First Amendment "safe harbor" in California Civil Code § 3344, section (d) of which states that "a use of a name, voice, signature, photograph, or likeness in connection with any news, public affairs, or sports broadcast or account, or any political campaign, shall not constitute a use for which consent is required."  Whether one categorizes the American Heroes edition as "newsworthy" or "public affairs," it is exempt under the California right-of-publicity statute.  Historical events—and the persons connected with them—remain "newsworthy" for decades.  Indeed, J. Thomas McCarthy emphasizes that very point in his discussion of the topic in his treatise: "The passage of time since the event seems to have little effect on the continued status of coverage as 'news.'" McCarthy, THE RIGHTS OF PUBLICITY AND PRIVACY 2d §8:52.  *Accord Street v. National Broadcasting Co.*, 645 F.2d 1227 (6th Cir. 1981) ("The mere passage of time does not automatically diminish the significance of events or the public's need for information.").

Bryan Cave LLP

Robert O'Brien
April 15, 2010
Page 4

For these reasons, Topps believes that its American Heroes edition is speech protected by the First Amendment.  Indeed, Topps included Dr. Aldrin within the American Heroes edition because it believes he is an America hero and is thus proud to be able to share such information with its audience.

I am happy to discuss this with you further, Robert.  But, as explained above, I feel it is important for you and your client to understand the basis for Topps' position on this matter before we have any discussion.

Very truly yours,

*Michael Kahn*

Michael A. Kahn

3354748.1

Arent Fox LLP / **Los Angeles, CA** / Washington, DC / New York, NY

# Arent Fox

May 12, 2010

**Robert C. O'Brien**
Attorney
213.629.7403 DIRECT
213.629.7401 FAX
obrien.robert@arentfox.com

**VIA E-MAIL**
mike.kahn@bryancave.com

**Reference Number**
202101.00014

Michael A. Kahn, Esq.
Bryan Cave LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO 63102

Re:   <u>Dr. Buzz Aldrin and The Topps Company</u>

Dear Michael:

Thank you for your letter dated April 15, 2010, wherein you set forth legal authority relating to Topps Trading Cards' use of Dr. Buzz Aldrin's name, likeness and signature in the Topps American Heritage:  American Heroes edition of trading cards.  While Dr. Aldrin appreciates the thought behind being identified by Topps as an American hero, our position remains that Topps has violated Dr. Aldrin's right of publicity under Cal. Civ. Code § 3344.

Ninth Circuit case law contradicts your statement that "[t]here is, in short, no personally identifiable feature of the astronaut, and, as noted above, the astronaut is not identified by name or even date." *See White v. Samsung Electronics America, Inc.*, 971 F.2d 1395 (9th Cir. (Cal.) 1992) (individual aspects of the advertisement viewed together left little doubt about which celebrity ad was meant to depict, even though ad did not use celebrity's name or likeness); *Motschenbacher v. R.J. Reynolds Tobacco Co.*, 498 F.2d 821 (9th Cir. (Cal.) 1974).

On July 20, 1969, the moon landing was watched live by a worldwide television audience of half a billion people.  There were only two persons that walked on the moon during the Apollo 11 mission, Dr. Aldrin and Neil Armstrong, who is clearly reflected in Dr. Aldrin's visor at the time the photograph used by Topps was taken ("Visor Shot").  This photograph, in conjunction with Dr. Aldrin's name, has graced the cover of countless world-renowned magazines, including the July 25, 1969 edition of *Time* magazine, the August 8, 1969 edition of *Life* magazine, and again, on the cover of *Life* magazine's "Collector's Edition" Spring 1998, in addition to countless television programs, movies, newspapers, magazines, history books, advertisement, and products.  In the October 1999 edition of *National Geographic* magazine, the Visor Shot was described as being "[n]early as famous as the words uttered on the moon by Neil Armstrong."  Moreover, Dr. Aldrin controls how his image and likeness in that photograph may be used with

LA/266816.4
SMART IN YOUR WORLD®

555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
T 213.629.7400  F 213.629.7401

1050 Connecticut Avenue, NW
Washington, DC 20036-5339
T 202.857.6000  F 202.857.6395

1675 Broadway
New York, NY 10019-5820
T 212.484.3900  F 212.484.3990

Michael A. Kahn, Esq.
May 12, 2010
Page 2

# Arent Fox

respect to commercial products.  Cal. Civ. Code. § 3344.  See also NASA rules regarding right of publicity.

You have conceded in your April 15, 2010 letter to me that Buzz Aldrin is one of the Heroes of Spaceflight in Topps' American Heroes edition and that his name, image or autograph appears on the package of the American Heroes series and on the front or back of some of the trading cards.  Such use is not, however, entitled to First Amendment protection, as it amounts to commercial speech and the marketability and economic value of the trading card set is derived primarily from the fame of various persons such as Dr. Aldrin, and not from any transformative element to his name or likeness that Topps has added to the trading card.  *See Comedy III Productions, Inc. v. Gary Saderup, Inc.* 25 Cal.4th 387 (2001), cert. denied, 122 S. Ct. 806 (Jan. 7, 2002).

<u>Tenth Circuit Law is Not Controlling</u>

Your letter omits discussion of the prevailing case law within California and the Ninth Circuit on First Amendment rights in the context of right of publicity law.  Although we are familiar with the Tenth Circuit's opinion in *Cardtoons, L.C. v. Major League Baseball Players Ass'n*, 95 F.3d 959 (10th Cir. 1996) on which you rely, we disagree that it has any precedential value, and, in any event, the facts of that case are distinguishable from the circumstances here.  As an initial matter, the trading cards in *Cardtoons* were caricatures – not photographs - of baseball players and the analysis was done in the context of Oklahoma law.  The Supreme Court of California called the Tenth Circuit's commentary in *Cardtoons* on the value of the right of publicity "dicta" and noted that "works of parody … of the celebrity figure are not, from the celebrity fan's viewpoint, good substitutes for conventional depictions and therefore do not generally threaten markets for celebrity memorabilia that the right of publicity is designed to protect." *Comedy III* at 406.  In this case, Topps has used Dr. Aldrins's image and likeness directly on the packaging of the trading card set (copy enclosed).  His name and signature are displayed on the cards themselves.  This use directly threatens Dr. Aldrin's market for memorabilia, which he alone has the right to control.  This conclusion is also supported by other jurisdictions that have considered the issue of right of publicity vis-à-vis trading cards.  *Haelan Laboratories, Inc. v. Topps Chewing Gum, Inc.*, 202 F.2d 866 (2nd Cir. 1953) (holding that a baseball player had a property interest in his photograph and likeness that could be exclusively licensed).  *Cardtoons* simply has no precedential value in the context of California law under these circumstances.

<u>California law</u>

California Civil Code Section 3344(a) makes liable any person who, without consent, knowingly uses a person's name, likeness, image or signature either "on or in" products, *or* in "advertising or selling" products.  Cal. Civ.Code § 3344. California common law right of publicity is in

LA/266816.4

Michael A. Kahn, Esq.
May 12, 2010
Page 3

**Arent Fox**

accord.  There is no question that Topps has knowingly used the name, likeness, and signature of Dr. Aldrin both on the product and in advertising the product on the package.

<u>The First Amendment:  Commercial and Expressive Speech</u>

Topps' use of Dr. Aldrin's name, likeness and signature does not qualify for First Amendment protection under the U.S. Constitution or California law, nor does it constitute a use for which consent is not required under subdivision (d) of § 3344.  "The First Amendment requires that the right to be protected from unauthorized publicity 'be balanced against the public interest in the dissemination of news and information consistent with the democratic processes under the constitutional guaranties of freedom of speech and of the press to tell it."  *Yeager v. Cingular Wireless LLC*, 673 F.Supp.2d 1089 (E.D. Cal. 2009) (denying summary judgment because Cingular was not entitled to First Amendment defense for unauthorized use of the name of Chuck Yeager, man who broke the sound barrier, in advertisement of unrelated Cingular product) *citing Giofriddo v. Major League Baseball*, 94 Cal.App.4th 400, 409 (2001).  "A tenuous connection between the unauthorized use of a person's name or likeness and the matter of public interest can remove the publication from the First Amendment's protection."  *Eastwood v. Superior Court*, 149 Cal.App.3d 409 (1983).  "[I]f the speech is classified as commercial speech, it is not actionable 'when the plaintiff's identity is used, without consent, to promote an unrelated product."  *Yeager v. Cingular Wireless LLC*, 673 F.Supp.2d 1089 (E.D. Cal. 2009) *citing Gionfriddo v. Major League Baseball*, 94 Cal.App.4th 400, 413 (2001).  "The 'core notion' of commercial speech is that it 'does not more than propose a commercial transaction."  *Id. citing Bolger v. Youngs Drug Prods. Co.*, 463 U.S. 60, 66 (1983).  "On the other end of the spectrum is speech that, when viewed as a whole, expresses editorial comment on matters of interest to the public."  *Id.*

In this case, Dr. Aldrin's image – one of the most famous images in the world for which millions of dollars in licensing fees have been paid - was used on the packaging of the trading cards as window-dressing to attract the attention of consumers to Topps' unrelated products.  There was no additional "expression" on the packaging which would trigger First Amendment protection.  Use of the Visor Shot merely induced a commercial transaction by advancing the carefully crafted "heroes" theme by Topps.  Such commercial speech that seeks to profit from Dr. Aldrin's persona is not entitled to First Amendment protection.

Even if Topps' use of the Visor Shot is not commercial speech, it is not protected by the First Amendment.  Although there is tension between the right of publicity and the First Amendment, the California Supreme Court has, in cases of expressive speech, adopted a balancing test between the First Amendment and the right of publicity based on whether the work in question adds significant creative elements so as to be transformed into something more than a mere celebrity likeness.  *Comedy III* at 395; *see also Winter v. DC Comics*, 30 Cal.4th 881, 885 (2003).

LA/266816.4

Michael A. Kahn, Esq.
May 12, 2010
Page 4

## Arent Fox

California courts have a long tradition of recognizing the strength of the right of publicity as a property right worthy of protection.  "[Not] all expression that trenches on the right of publicity receives [First Amendment] protection.  The right of publicity, like copyright, protects a form of intellectual property that society deems to have some social utility.  'Often considerable money, time and energy are needed to develop one's prominence in a particular field.  Years of labor may be required before one's skill, reputation, notoriety or virtues are sufficiently developed to permit an economic return through some medium of commercial promotion.  For some, the investment may eventually create considerable commercial value in one's identity.'"  *Comedy III* at 389 *citing* the dissent by Bird, C. J. which was concurred in by Tobriner, J., and Manuel, J. in *Lugosi v. Universal Pictures*, 25 Cal. 3d 813, 834-835.  It is the dissent which in essence became former Civil Code §990 and Civil Code § 3344 as amended in 1984.

"[T]he right of publicity is essentially an economic right.  What the right of publicity holder possesses is not a right of censorship, but a right to prevent others from misappropriating the economic value generated by the celebrity's fame through the merchandising of the 'name, voice, signature, photograph, or likeness' of the celebrity."  *Comedy III* at 403.

Topps, as the party relying on the First Amendment to shield itself from liability for infringement, must articulate the significant transformative elements that it has added so that the use of Dr. Aldrin's name, likeness, image and signature is "transformative."  Topps must show that the value of the cards does not derive primarily from Dr. Aldrin's fame.  *Comedy III*  at 407.  ("When an artist is faced with a right of publicity challenge to his or her work, he or she may raise as affirmative defense that the work is protected by the First Amendment inasmuch as it contains significant transformative elements or that the value of the work does not derive primarily from the celebrity's fame.").

With respect to the "transformative" analysis, in distinguishing between protected and unprotected expression, the California Supreme Court, borrowing from copyright law, asks whether the new work merely "supersede[s] the objects of the original creation, or instead adds something new, with a further purpose or different character, altering the first with new expression, meaning, or message; it asks, in other words, whether and to what extent the new work is 'transformative'".  *Comedy III* at 404 – 405.  "When we use the word 'expression,' we mean expression of something other than the likeness of the celebrity."  *Comedy III* at 406.

"When artistic expression takes the form of literal depiction or imitation of a celebrity for commercial gain, directly trespassing on the right of publicity without adding significant expression beyond that trespass, the state law interest in protecting the fruits of artistic labor outweighs the expressive interests of the imitative artist."  *Comedy III* at 405.

Michael A. Kahn, Esq.
May 12, 2010
Page 5

## Arent Fox

The photograph used by Topps is of Dr. Aldrin on the moon with the Eagle lunar module and Neil Armstrong reflected in his visor.  It is a literal depiction of Dr. Aldrin, is commercial speech, and in no way is it transformative.  The image is displayed on the trading card packaging and his name and signature on trading cards in violation of Cal. Civ. Code § 3344 and California common law.  Since there is no additional expression that makes Topps' use "transformative" in any way, it is not entitled to First Amendment protection under California law.

Over the years, Dr. Aldrin has aggressively pursued numerous infringers, has enjoined their unpermitted use of his right of publicity, and has obtained large settlements when forced into litigation.  Under Cal. Civ. Code § 3344, the prevailing party is entitled to attorneys' fees, which we will also pursue if litigation becomes necessary.  Notwithstanding the foregoing, Dr. Aldrin would prefer a business resolution in this case, and would consider a prospective license to Topps for the use of his name, likeness, image and signature, as he does on a regular basis with other memorabilia companies, plus compensation for a retroactive license back to Topps' first use and attorneys fees incurred by Topps for its failure to have licensed his image.

Please contact me at your earliest convenience.

Very truly yours,

Robert C. O'Brien

RCO:jt

Enclosure

LA/266816.4

Arent Fox LLP / Los Angeles, CA / Washington, DC / New York, NY

# Arent Fox

June 8, 2010

VIA FEDERAL EXPRESS

Michael A. Kahn, Esq.
Bryan Cave LLP
One Metropolitan Square
211 North Broadway, Suite 3600
St. Louis, MO  63102

**Jennifer C. Terry**
Attorney
213.629.7415 DIRECT
213.629.7401 FAX
terry.jennifer@arentfox.com

Reference Number
**202101.00014**

Re:     Aldrin v. The Topps Company

Dear Mr. Kahn:

As you have discussed with my colleague, Robert O'Brien, our office has handled on behalf of Dr. Buzz Aldrin over a hundred matters where third parties have used images of Dr. Aldrin on the moon for commercial purposes without Dr. Aldrin's permission, in violation of his right of publicity.  I am attaching for your review a small sampling of those infringements.  As you will see, they range from use of Dr. Aldrin's image on a trading card and its product packaging to use of his image on the cover of a book and educational software packaging.  In each instance, Dr. Aldrin received compensation for such unauthorized commercial use.  Although we cannot disclose the amount for which each matter was settled, I can tell you that the settlement payments for the infringements included in this letter alone total over $760,000.  These infringements are only a small subset of infringements handled by our office where Dr. Aldrin received settlement payments for use of his image in connection with commercial products.  As you can see, Topps' use of Dr. Aldrin's image on its trading card packaging is not unique, nor is its argument that the historic nature of Dr. Aldrin's accomplishment somehow excuses Topps' use of the "Visor Shot" from the right of publicity statutory and common law regime.

I am also enclosing various orders and tentative orders issued by both federal and state courts enjoining unauthorized commercial use of Dr. Aldrin's image.  These Courts have explicitly recognized the right of publicity that Dr. Aldrin and other astronauts have in the photos taken on the moon under Cal. Civ. Code §3344.

Courts would not consider Topps' use of Dr. Aldrin's image "educational" under California law.  As the District Judge David O. Carter said in his Tentative Order Granting Plaintiff's Motion for Preliminary Injunction in the *Conrad, Aldrin, Irwin v. Actions Products, Inc.* case, "The sale and mass-marketing of toys for profit, even 'educational' toys, do not fit within the 'public affairs' exception in [Cal.] Civil Code §§ 3344(d) and 3344.1(j).  The protections of the First

LA/285638.1

555 West Fifth Street, 48th Floor     1050 Connecticut Avenue, NW     1675 Broadway
Los Angeles, CA 90013-1065          Washington, DC 20036-5339         New York, NY 10019-5820
T 213.629.7400  F 213.629.7401      T 202.857.6000  F 202.857.6395     T 212.484.3900  F 212.484.3990

SMART IN YOUR WORLD"

Michael A. Kahn,
Esq.
June 8, 2010
Page 2

**Arent Fox**

Amendment do not bar Plaintiffs from being compensated from commercial exploitation of their names and likenesses." *See Tentative Order*, p. 7.

I hope that the enclosed material will assist you in further discussing this matter with your client. I know that Robert is looking forward to receiving a settlement proposal from you in the near future.

Sincerely,

Jennifer C. Terry

LA/285638.1



