DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST.
SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
TELEPHONE (213) 633-6800
FAX (213) 633-6899

ALONZO WICKERS IV (State Bar No. 169454)
  alonzowickers@dwt.com
LISA J. KOHN (State Bar No. 260236)
  lisakohn@dwt.com

Attorneys for Defendant
THE TOPPS COMPANY, INC.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. BUZZ ALDRIN and STARBUZZ, LLC, a California limited liability company,<br><br>             Plaintiffs,<br><br>    vs.<br><br>TOPPS COMPANY, INC., a Delaware corporation; and DOES 1 through 10,<br><br>             Defendants. | Case No. CV10 09939 DDP<br>Assigned to the Hon. Dean D. Pregerson<br><br>**DEFENDANT THE TOPPS COMPANY, INC.'S OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**<br><br>Date:      April 25, 2011<br>Time:     10:00 a.m.<br>Courtroom: 3<br><br>Action Filed: December 27, 2010<br><br>[Declarations of Matthew Perrone and Alexander Gigante with Exhibit T and Second Declaration of Mark Sapir Filed Concurrently] |

Defendant The Topps Company, Inc. respectfully submits the following

Opposition to plaintiffs Dr. Buzz Aldrin's and Starbuzz, LLC's Motion for

Preliminary Injunction.

# TABLE OF CONTENTS

Page

1. SUMMARY OF ARGUMENT ............................................................. 1

2. SUMMARY OF FACTS ................................................................. 3

3. PLAINTIFFS CANNOT SATISFY THE EXACTING CRITERIA FOR A PRELIMINARY INJUNCTION ................................................ 6

    A. Plaintiffs Cannot Demonstrate A Likelihood Of Success On The Merits. ................................................................ 7

        1. *American Heroes* Enjoys Full First Amendment Protection................................................................ 7

        2. Plaintiffs' Claims Are Barred By The First Amendment And Civil Code Section 3344(d). ...................... 9

            a. The Constitutional Public-Interest Test ........................... 9

            b. Civil Code Section 3344(d) ............................................. 13

            c. The Transformative-Use Test ........................................... 15

            d. The Rogers/Restatement Test ........................................... 18

            e. The Constitutional Actual-Malice Standard ................... 19

    B. Plaintiffs Cannot Show A Likelihood Of Irreparable Injury............. 21

    C. The Balance of Equities Favors Topps................................. 23

    D. A Preliminary Injunction Is Not In The Public Interest. .................. 24

4. THE INJUNCTIVE RELIEF THAT PLAINTIFFS SEEK WOULD CONSTITUTE AN UNCONSTITUTIONAL RESTRAINT ON SPEECH. ................................................................ 24

5. CONCLUSION ................................................................ 25

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Abdul-Jabbar v. GM,*
    85 F.3d 407 (9th Cir. 1996)........................................................................ 8

*Alexander v. United States,*
    509 U.S. 544, 113 S. Ct. 2766, 125 L. Ed. 2d 441 (1993)......................... 24

*Allison v. Vintage Sports Plaques,*
    136 F.3d 1443 (11th Cir. 1998).................................................................. 12

*Amer. Trucking Ass'n v. City of Los Angeles,*
    559 F.3d 1046 (9th Cir. 2009)................................................................. 2, 7

*Bolger v. Youngs Drug Prods.,*
    463 U.S. 60, 77 L. Ed. 2d 469, 103 S. Ct. 2875 (1983).............................. 8

*C.B.C. Distribution v. Major League Baseball Advanced Media,*
    505 F.3d 818 (8th Cir. 2007)......................................................... 10, 11, 20

*Cardtoons v. Major League Baseball Players Ass'n,*
    95 F.3d 959 (10th Cir. 1996)........................................................ 8, 10, 14

*CBS Interactive v. NFL Players Ass'n,*
    259 F.R.D. 398 (D. Minn. 2009)............................................................... 12

*CBS v. Davis,*
    510 U.S. 1315 (1994) (Blackmun, J., in chambers).................................. 25

*Cher v. Forum Int'l,*
    692 F.2d 634 (9th Cir. 1982)...................................................................... 9

*Comedy III Prods., v. Gary Saderup,*
    25 Cal. 4th 387, 106 Cal. Rptr. 2d 126 (2001)...................... 14, 15, 16, 17

*Conrad, Aldrin, Irwin v. Actions Products,*
    Case No. SA CV 99-1223 DOC................................................................ 13

*Cooper v. Aaron,*
    358 U.S. 1, 78 S. Ct. 1401, 3 L. Ed. 2d 5 (1958).................................... 18

ii

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Dora v. Frontline Video,*
    15 Cal. App. 4th 536 (1993)...................................................... 14, 15

*Eastwood v. Nat'l Enquirer,*
    123 F.3d 1249 (9th Cir. 1997).................................................... 20

*Eastwood v. Superior Court,*
    149 Cal. App. 3d 409, 198 Cal. Rptr. 342 (1983)......................... 14

*Eclipse Enterprises v. Gulotta,*
    134 F.3d 63 (2d Cir. 1997)......................................................... 13

*El Pollo Loco v. Hashim,*
    316 F.3d 1032 (9th Cir. 2003)...................................................... 7

*ETW Corp. v. Jireh Publ'g,*
    332 F.3d 915 (6th Cir. 2003)...................................................... 17

*Gionfriddo v. Major League Baseball,*
    94 Cal. App. 4th 400, 114 Cal. Rptr. 2d 307 (2001)..................... 10

*Global Horizons v. U.S. Dept. of Labor,*
    510 F.3d 1054 (9th Cir. 2007)....................................................... 7

*Goldie's Bookstore v. Superior Court,*
    739 F.2d 466 (9th Cir. 1984)...................................................... 22

*Haelan Laboratories v. Topps Chewing Gum, Inc.,*
    202 F.2d 866 (2nd Cir. 1952)..................................................... 13

*Hilton v. Hallmark Cards,*
    599 F.3d 894 (9th Cir. 2010)............................................. 8, 16, 18

*Hoffman v. Capital Cities/ABC,*
    255 F.3d 1180 (9th Cir. 2001)................................................ 8, 20

*Johnson v. Cal. State Bd. of Accountancy,*
    72 F.3d 1427 (9th Cir. 1995)........................................................ 7

*Lacoff v. Buena Vista Publ'n,*
    705 N.Y.S.2d 183, 183 Misc. 2d 600 (N.Y. Sup. Ct. 2000)............. 9

*Lane v. Random House,*
    985 F. Supp. 141 (D.D.C. 1995)................................................... 9

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Los Angeles Memorial Coliseum Comm'n v. NFL,*
    634 F.2d 1197 (9th Cir. 1980)................................................ 22

*Lydo Enters. v. Las Vegas,*
    745 F.2d 1211 (9th Cir. 1984)................................................ 24

*Mazurek v. Armstrong,*
    520 U.S. 968, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) *(per curiam)* ............ 6

*Michaels v. Internet Entertainment Group,*
    1998 U.S. Dist. LEXIS 20786 (C.D. Cal. Sept. 11, 1998) .......................... 10, 21

*Michaels v. Internet Entertainment Group,*
    5 F. Supp. 2d 823 (C.D. Cal. 1998) ........................................ 21

*Midler v. Ford Motor Co.,*
    849 F.2d 460 (9th Cir. 1988)................................................ 8

*Montana v. San Jose Mercury News,*
    34 Cal. App. 4th 790, 40 Cal. Rptr. 2d 639 (1995)................................ 10, 11, 15

*Nebraska Press Ass'n v. Stuart,*
    427 U.S. 539, 96 S. Ct. 2791, 49 L. Ed. 2d 683 (1976).......................... 24

*New Kids on the Block v. News America Publ'g,*
    971 F.2d 302 (9th Cir. 1992)................................................ 14, 15

*New York Times v. United States,*
    403 U.S. 713, 91 S. Ct. 2140, 29 L. Ed. 2d 822 (1971) *(per curiam)* ............... 25

*Newcombe v. Adolph Coors Co.,*
    157 F.3d 686 (9th Cir. 1998)................................................ 8

*Oakland Tribune v. Chronicle Publ'g,*
    762 F.2d 1374 (9th Cir. 1985)................................................ 23

*Page v. Something Weird Video,*
    960 F. Supp. 1438 (C.D. Cal. 1996) ........................................ 9

*Perfect 10 v. Amazon.com,*
    487 F.3d 701 (9th Cir. 2007)................................................ 7

*Polydoros v. Twentieth Century Fox,*
    57 Cal. App. 4th 795 (1997)................................................ 20

iv

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

*Procter & Gamble Co. v. Bankers Trust Co.,*
    78 F.3d 219 (6th Cir. 1996) ................................................................... 25

*RAR, Inc. v. Turner Diesel,*
    107 F.3d 1272 (7th Cir. 1997) ................................................................ 18

*Rogers v. Grimaldi,*
    875 F.2d 994 (2d Cir. 1988) ............................................................. 18, 19

*Romantics v. Activision Publ'g,*
    532 F. Supp. 2d 884 (E.D. Mich. 2008) ............................................. 22, 24

*Sampson v. Murray,*
    415 U.S. 61, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974) ............................... 22

*Seale v. Gramercy Pictures,*
    949 F. Supp. 331 (E.D. Pa. 1996) ......................................................... 19

*Snyder v. Phelps,*
    U.S. Supr. Ct. Case No. 09–751, 562 U.S. ____ (March 2, 2011) ................ 9

*Tyne v. Time Warner,*
    901 So. 2d 802 (Fla. 2005) ................................................................... 19

*Valeo Intellectual Prop. v. Data Depth Corp.,*
    368 F. Supp. 2d 1121 (W.D. Wash. 2005) .............................................. 23

*Wendt v. Host Int'l,*
    197 F.3d 1284 (9th Cir. 1999) ............................................................... 12

*White v. Samsung Elecs.,*
    971 F.2d 1395 (9th Cir. 1992) ................................................................. 8

*William O'Neil & Co. v. Validea.com,*
    202 F. Supp. 2d 1113 (C.D. Cal. 2002) .................................................... 9

*Winter v. NRDC,*
    555 U.S. 7, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008) ....................... passim

**STATUTES**

California Civil Code Section 3344 ............................................................. 15

California Civil Code § 3344(d) ............................................................ passim

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

California Code of Civil Procedure § 425.16(g) ..................................................... 25

**RULES**

Local Rule 7-3 .......................................................................................... 12

**CONSTITUTIONAL PROVISIONS**

United States Constitution, First Amendment ................................................ passim

United States Constitution, Sixth Amendment ...................................................... 25

**TREATISES**

*Restatement (Third) of Unfair Competition,* § 46 ................................................. 19

*Restatement (Third) of Unfair Competition,* § 47 ................................................. 19

*Restatement (Third) of Unfair Competition,* § 47, cmt. C ...................................... 19

TOPPS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
DWT 16632738v6 0062840-000009

**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.   SUMMARY OF ARGUMENT

Buzz Aldrin is an American hero.  He played a key role in this nation's space program, and his achievements have been chronicled in countless books, films, and other expressive works, including Topps' *American Heritage: American Heroes Edition* of trading cards ("*American Heroes*").  *See* Exs. A-J.[1]  But Aldrin also has become a right-of-publicity bully, using threats and lawsuits to cow publishers into paying him license fees to use his name and likeness in expressive works about American history.  *See, e.g.,* Compl. Ex. 6; Ex. T.  For example, just months before threatening to sue Topps, Aldrin demanded a license fee from The Viking Press for its use of a famous NASA photograph of the lunar landing on the cover of its acclaimed book *Rocket Men: The Epic Story of the First Men on the Moon*.  Gigante Decl. ¶ 3 and Ex. T.  His counsel warned Viking that Aldrin would sue the publisher because its use of the photo on the book's cover allegedly "deprived Dr. Aldrin of his fundamental right to control how he is depicted in connection with the sale of commercial goods and services and to benefit from such activity."  *Id.*  In other words, Aldrin believes that books and other expressive works are no different than coffee mugs, toys, or other functional, non-expressive "commercial goods," and that he – or presumably any former President, military general, or other celebrated former federal employee – has the right to collect money whenever his or her name or likeness appears in an expressive work about American history.

Not surprisingly, the law does not support Plaintiffs' insidiously broad view of the right of publicity, their narrow view of the First Amendment, or their motion for a preliminary injunction.  As a threshold matter, Plaintiffs do not even identify the correct standard for preliminary injunctive relief.  In their motion, they argue

---

[1] Exhibits A-S were filed with Topps' pending anti-SLAPP motion.  *See* Docket Nos. 24-25.  Exhibit T is attached to the concurrently-filed declaration of Alexander Gigante.

TOPPS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
DWT 16632738v6 0062840-000009

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

that they need to show only a "possibility" of irreparable harm to support an injunction. Motion at 10-11. But the United States Supreme Court has rejected that standard as "too lenient." *Winter v. NRDC*, 555 U.S. 7, 28, 129 S. Ct. 365, 172 L. Ed. 2d 249 (2008). Instead, the Court has instructed that a "plaintiff seeking a preliminary injunction must establish [1] that he is *likely to succeed on the merits*, [2] that he is *likely to suffer irreparable harm* in the absence of preliminary relief, [3] that the balance of equities tips in his favor, *and* [4] that an injunction is in the public interest." *Id.* at 24-25 (emphases added). The pre-*Winter* cases that Plaintiffs rely on "are no longer controlling, or even viable." *Amer. Trucking Ass'n v. City of Los Angeles*, 559 F.3d 1046, 1052 (9th Cir. 2009).

Plaintiffs cannot satisfy any – much less all – of the elements of the *Winter* standard. *First*, they are not even remotely likely to succeed on the merits. As set forth in Topps' pending anti-SLAPP motion and below, the First Amendment and California Civil Code § 3344(d) bar Plaintiffs' right-of-publicity and ancillary claims. *Second*, they cannot demonstrate that they are likely to suffer irreparable harm in the absence of injunctive relief. Indeed, their attempts to negotiate a license fee for Topps' use of Aldrin's name and likeness (*see* Compl. Ex. 6) and their seventeen-month delay in seeking an injunction belie any purported irreparable harm. Moreover, they provide no concrete facts to support their argument that, absent an injunction, Aldrin's reputation and goodwill will be irremediably damaged by an expressive work that hails him as an American hero (and was published a year and a half ago). *Finally*, Plaintiffs do not even attempt to show that the balance of equities tips in their favor, and that the public interest favors an injunction. Nor could they make those showings. Allowing retired government officials to exact a license fee for the use of their names and likenesses in historical works is profoundly at odds with core First Amendment values. Plaintiffs' failure to carry their burden on these two factors independently defeats their motion.

For each of these reasons, Plaintiffs' motion must be denied.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

## 2.   SUMMARY OF FACTS

The Topps Company creates and distributes trading cards.  Sapir Decl. ¶ 2.[2]
It was founded in 1938 as Topps Chewing Gum and began including trading cards
with its gum in 1950.  *Id.*  Its baseball cards quickly became a vital part of popular
culture, a tradition that continues to this day.  *Id.*  Topps also has a rich history of
creating non-sports trading cards, including its parody *Wacky Packages* cards and
cards devoted to key figures and events in American history, such as President John
F. Kennedy, the lunar landing, and Operation Desert Storm.  Second Sapir Decl. ¶
2.  In 2008, Topps released the *Topps American Heritage* line of cards.  The 2008
edition featured images of Barack Obama, Babe Ruth, and President Kennedy on its
cover and "Election Collection" cards for the presidential election.  Sapir Decl. ¶ 3.

In August 2009, Topps released the *Topps American Heritage: American
Heroes Edition* of trading cards, the expressive work at issue in this lawsuit.  Sapir
Decl. ¶ 4; Exs. A-J.  *American Heroes* celebrates hundreds of personalities from our
nation's history, including politicians, scientists, civil-rights leaders, sports figures,
and explorers.  Exs. A-J.  Each "base" card in the series features an American
hero's image or an image of a noteworthy event or organization on the front, with
information about his or her achievements on the back.  *Id.  American Heroes*
includes common elements of other collectible trading cards, such as autographs,
relics (*e.g.*, a piece of fabric from an actual uniform), and "cut signatures" (an
original autograph cut from another document).  *Id.*; Sapir Decl. ¶¶ 10-15.

One theme of *American Heroes* is "Heroes of Spaceflight," which provides
educational information about NASA missions and astronauts with 28 Heroes of
Spaceflight cards, 25 Heroes of Spaceflight cut-signatures cards, and 28 Heroes of
Spaceflight patch cards.  Sapir Decl. ¶ 12; Ex. J.  This category includes cards that

---

[2] References in this brief to the "Sapir Decl." are to the Sapir Declaration that
Topps filed in support of its anti-SLAPP motion on March 4, 2011.  (Docket No.
24.)  Topps has filed a "Second Sapir Declaration" in support of this opposition.

3
TOPPS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
DWT 16632738v6 0062840-000009

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

commemorate Project Gemini and the Apollo Program. Exs. A-G. The "HSF-16 Gemini XII" card (identified in the complaint as the "Gemini Card") features images of the Gemini XII spacecraft and the official mission patch on the front. Ex. B; Compl. Ex. 4. The back of the card provides information about the mission, with the following description regarding Aldrin and his part in this historic achievement:

> Astronauts had operated outside the spacecraft before, but astronaut
> Buzz Aldrin's smooth, multi-tasking space walk outside Gemini XII
> was what finally confirmed NASA's highest hopes for extra-vehicular
> astronaut activity. Gemini XII's flawless, computer-guided re-entry
> marked the end of Project Gemini; America was ready to shoot for the
> moon.

Ex. B. The "HSF-22 Apollo 11" card, which is not addressed in Plaintiffs' complaint, features an image of the Apollo 11 spacecraft and the official NASA mission patch on the front, with the following text on the back:

> It was all leading up to this. After playing catch-up on the space race
> and enduring tragedy and trial, the American space program finally
> made it to the moon on July 20, 1969. Neil Armstrong and Buzz Aldrin
> landed the lunar module nicknamed "Eagle" on the moon's surface.
> There, Armstrong took his famous "one small step," while the world
> watched in awe.

Ex. C. *American Heroes* also includes a single "Heroes of Spaceflight Cut Signature" card for Buzz Aldrin (the "HSFS-BA Buzz Aldrin Card"), which has an original signature cut from another document affixed to the card. Sapir Decl. ¶ 9; Ex. G. Because the "cut signature" is an original, not a reproduction, *only one* HSFS-BA Buzz Aldrin Card exists among thousands of cards in the set. *Id.*

     *American Heroes* was sold in boxes that contain 24 packs of cards, with 8 cards in each pack. *Id.* at ¶ 15. The work's cover features three images that reflect its content: an astronaut, who appears above the caption "Moon Landing: Apollo

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

11"; Abraham Lincoln, who appears above a caption with his name; and Mickey Mantle, who appears above a caption with his name. Ex. A; Compl. Ex. 2. The image of the astronaut is a NASA photograph of Aldrin in a white lunar-landing spacesuit, his face completely obscured by his helmet and faceplate, which reflects the image of Neil Armstrong and the lunar landing module. Compl. ¶ 9.

Plaintiffs allege that this "Visor Shot" is "arguably the most famous of all space-related photographs," and "has graced the cover of countless world-renowned magazines, including the July 25, 1969 edition of *Time* magazine" – uses for which Aldrin presumably was not paid – "in addition to countless television programs, movies, newspapers, magazines, history books, advertisement, and products." *Id.* *The Children's Encyclopedia of American History* is among the works that use the Visor Shot on the cover. Exs. N-S. Notably, the Visor Shot is a NASA photograph; as a government entity, NASA does not copyright such images or require a license for their use. *See* spaceflight1.nasa.gov/gallery/guidelines_nasa_imagery.pdf (Ex. L). NASA's "Guidelines for Use of NASA Imagery" provide:

> If a recognizable person, or talent (e.g., an astronaut …) appears in NASA material, use for *commercial* purposes may infringe a right of privacy or publicity. Therefore, permission should be obtained from the recognizable person or talent if the proposed use of the NASA material could be viewed as a commercial exploitation of that person. However, *if the intended use of NASA material is primarily for communicative purposes, i.e., books, newspapers, and magazines reporting facts of historical significance (constitutionally protected media uses), then such uses will generally be considered not to infringe such personal rights.*

Ex. L (emphases added).

In October 2009, well after Topps released *American Heroes*, Aldrin's licensing agent demanded payment from Topps for the inclusion of his name and

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

likeness in the work.  Compl. Ex. 6.  Aldrin's attorney asserted that his client has obtained "millions of dollars in licensing fees for use of the 'Visor Shot,'" and settlement payments of more than $760,000 for purported "infringements," such as the use of the Visor Shot on a book cover and on educational software.  *Id.*  Topps promptly responded, explaining that its use of Aldrin's name and likeness is protected by the First Amendment.  *Id.*  On December 27, 2010, Aldrin and StarBuzz LLC, the assignee of his publicity rights for licensing purposes, filed this lawsuit for violation of his common-law and statutory right of publicity, unfair business practices, and unjust enrichment.  The allegedly actionable uses of his identity concern what Plaintiffs describe as the "Gemini Card," the "Signature Card," the "Inset," and the "Packaging."  Compl. ¶ 14.  *See also* Exs. B, G.

Now, more than *17 months* after Plaintiffs admittedly learned that the work included Aldrin's name and likeness, Plaintiffs seek to enjoin its sale.  Topps obtains orders for its trading cards from retailers before their release, and publishes only enough cards to fulfill the orders placed.  Second Sapir Decl. ¶ 4.  Once Topps distributes the cards that have been ordered, it does not create additional cards for that edition of the release.  *Id.*  Topps last distributed *American Heroes* to retailers in August 2009.  *Id.* ¶ 5.  Topps is informed and believes that *American Heroes* is no longer available for sale at major retailers, and may be obtained only in limited quantities through online sales, independent stores, or re-sellers.  *Id.* ¶ 6.

## 3.   PLAINTIFFS CANNOT SATISFY THE EXACTING CRITERIA FOR A PRELIMINARY INJUNCTION.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion."  *Mazurek v. Armstrong*, 520 U.S. 968, 972, 117 S. Ct. 1865, 138 L. Ed. 2d 162 (1997) (*per curiam*).  Thus, "the requirement for substantial proof is much higher" on "a plaintiff's motion for preliminary injunction" than it is on "a defendant's motion for summary judgment."  *Id.*  To demonstrate an entitlement to

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

a preliminary injunction, "the moving party must necessarily demonstrate it will overcome defenses raised by the non-moving party." *Perfect 10 v. Amazon.com*, 487 F.3d 701, 714 (9th Cir. 2007). "This burden is correctly placed on the party seeking to demonstrate entitlement to the extraordinary remedy of a preliminary injunction at an early stage of the litigation, before the defendant has had the opportunity to undertake extensive discovery or develop its defenses." *Id.*

In *Winter*, the United States Supreme Court expressly rejected the preliminary-injunction standard relied on by Plaintiffs (Motion at 10-11), which required the moving party to show only a "possibility" of irreparable harm. 555 U.S. at 27-28. Instead, the Court made clear that a "plaintiff seeking a preliminary injunction must establish [1] that he is likely to succeed on the merits, [2] that he is *likely* to suffer *irreparable harm* in the absence of preliminary relief, [3] that the balance of equities tips in his favor, *and* [4] that an injunction is in the public interest." *Id.* at 24-25 (emphases added). The preliminary-injunction cases that Plaintiffs rely on – *Global Horizons v. U.S. Dept. of Labor*, 510 F.3d 1054, 1057 (9th Cir. 2007), *Johnson v. Cal. State Bd. of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995), and *El Pollo Loco v. Hashim*, 316 F.3d 1032, 1038 (9th Cir. 2003) – all pre-date *Winter*, and apply the more lenient standard that the Supreme Court rejected. The Ninth Circuit has recognized that "[t]o the extent that our cases" – such as those cited by Plaintiffs – "have suggested a lesser standard, they are no longer controlling, or even viable." *Amer. Trucking Ass'n*, 559 F.3d at 1052.

Under the controlling standard, Plaintiffs must establish *all four elements* to obtain an injunction. Because they cannot do so – and, in fact, fail to set forth any argument or evidence on the final two elements – their motion should be denied.

## A.   Plaintiffs Cannot Demonstrate A Likelihood Of Success On The Merits.

### 1.   *American Heroes* Enjoys Full First Amendment Protection.

Plaintiffs insist that Topps' use of Aldrin's identity in *American Heroes* and on its cover constitutes "commercial speech." Motion at 2, 14-15. Conspicuously,

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

they do not – and could not – cite *any* case law to support this proposition. The Ninth Circuit has defined commercial speech as speech that "does no more than propose a commercial transaction." *Hoffman v. Capital Cities/ABC*, 255 F.3d 1180, 1184 (9th Cir. 2001) (citing *Bolger v. Youngs Drug Prods.*, 463 U.S. 60, 66, 77 L. Ed. 2d 469, 103 S. Ct. 2875 (1983)). In *Hoffman*, the court offered several examples of uses of a celebrity's identity that constituted commercial speech. *Id.*, citing *Newcombe v. Adolph Coors Co.*, 157 F.3d 686, 691 (9th Cir. 1998) (use of baseball pitcher's image in beer ad); *Abdul-Jabbar v. GM*, 85 F.3d 407, 409 (9th Cir. 1996) (use of basketball star's former name in car ad); *White v. Samsung Elecs.*, 971 F.2d 1395, 1396 (9th Cir. 1992) (as amended) (use of game-show hostess' identity in ad for electronic products); *Midler v. Ford Motor Co.*, 849 F.2d 460, 461 (9th Cir. 1988) (use of "sound-alike" of singer's voice in car ad). Plaintiffs do not even attempt to explain how Topps' use of Aldrin's name and likeness in *American Heroes* satisfies this definition of commercial speech.

*Hilton v. Hallmark Cards*, 599 F.3d 894 (9th Cir. 2010), is instructive. There, Paris Hilton argued that a greeting card that featured her likeness was commercial speech. *Id.* at 905 and n.7. The court flatly disagreed, citing with approval the Tenth Circuit's decision recognizing that trading cards are entitled to full First Amendment protection. "As one of our sister circuits has recognized, … 'commercial speech is best understood as speech that merely advertises a product or service for business purposes.'" *Id.*, quoting *Cardtoons v. Major League Baseball Players Ass'n*, 95 F.3d 959, 970 (10th Cir. 1996). The court noted that "Hallmark's card is not advertising the product; it is the product. It is sold for a profit, but that does not make it commercial speech for First Amendment purposes." *Id.*

The same is true here. *American Heroes* is an expressive work, does not advertise an unrelated product, and does not merely propose a commercial transaction. Accordingly, it is entitled to full constitutional protection.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Plaintiffs' commercial-speech argument also ignores Ninth Circuit case law establishing that the constitutional protection for an expressive work "extends to the truthful use of a public figure's name and likeness in advertising which is merely an adjunct of the protected publication." *Cher v. Forum Int'l*, 692 F.2d 634, 639 (9th Cir. 1982). Courts in this District repeatedly have recognized this rule. *See, e.g., Page v. Something Weird Video*, 960 F. Supp. 1438, 1444 (C.D. Cal. 1996) (use of a drawing of actress in catalog advertising her films and on video box covers was "incidental to the protected publication of the videos" and was protected); *William O'Neil & Co. v. Validea.com*, 202 F. Supp. 2d 1113, 1119 (C.D. Cal. 2002) (defendants' use of plaintiff's name on a "book cover, flyleaf, and other material" promoting book was "protected to the same extent as the book").[3]

Here, the use of the Visor Shot on the cover of *American Heroes*, next to images of Abraham Lincoln and Mickey Mantle, accurately reflects the "Heroes of Spaceflight" cards in the set, which inform the public about the space program and Aldrin's and other astronauts' achievements. Thus, the use of Aldrin's image on *American Heroes*' cover and internal packaging is entitled to the same First Amendment protection as the use of his name and likeness in the work itself.

**2.    Plaintiffs' Claims Are Barred By The First Amendment And Civil Code Section 3344(d).**

**a.    The Constitutional Public-Interest Test**

The United States Supreme Court recently reaffirmed that "speech on public issues occupies the highest rung of the hierarchy of First Amendment values, and is entitled to special protection." *Snyder v. Phelps*, U.S. Supr. Ct. Case No. 09–751, at 6, 562 U.S. _____ (March 2, 2011) (barring state-law tort claim based on speech concerning matters of public import). The Court instructed that "[s]peech deals

---

[3] *Accord Lane v. Random House*, 985 F. Supp. 141, 152 (D.D.C. 1995) (same; ads for book); *Lacoff v. Buena Vista Publ'n*, 705 N.Y.S.2d 183, 191, 183 Misc. 2d 600 (N.Y. Sup. Ct. 2000) (same; statements on cover and flyleaf of book).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

TOPPS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
DWT 16632738v6 0062840-000009

with matters of public concern when it can be fairly considered as relating to any matter of political, social, or other concern to the community … or when it is a subject of legitimate news interest; that is, a subject of general interest and of value and concern to the public." *Id.* (citations and quotation marks omitted).

Reflecting these principles, California courts have found that under the First Amendment, "no cause of action [for violation of the right of publicity] will lie for the publication of matters in the public interest[.]" *Montana v. San Jose Mercury News*, 34 Cal. App. 4th 790, 795, 40 Cal. Rptr. 2d 639 (1995). The constitutional public-interest defense "is to be construed broadly," and "is not limited to 'news' in the narrow sense of reports of current events." *Michaels v. Internet Entertainment Group*, 1998 U.S. Dist. LEXIS 20786, *3 (C.D. Cal. Sept. 11, 1998). It applies equally to the dissemination of information in various media, ranging from online fantasy-sports games (*C.B.C. Distribution v. Major League Baseball Advanced Media*, 505 F.3d 818, 822-824 (8th Cir. 2007)) and parody trading cards (*Cardtoons*, 95 F.3d at 969), to baseball-game programs (*Gionfriddo v. Major League Baseball*, 94 Cal. App. 4th 400, 410-411, 114 Cal. Rptr. 2d 307 (2001)) and posters (*Montana*, 34 Cal. App. 4th at 795). The court in *Gionfriddo* expressly declared that "[e]ntertainment features receive the same constitutional protection [against right-of-publicity claims] as factual news reports." 94 Cal. App. 4th at 410. The Tenth Circuit echoed this principle in *Cardtoons*, recognizing that "[s]peech that entertains, like speech that informs, is protected by the First Amendment because 'the line between informing and entertaining is too elusive for the protection of that basic right.'" 95 F.3d at 969 (citations omitted).

*Gionfriddo* is on point. The defendant in that case used retired baseball players' "names," "photographs and video clips," and "descriptions of [their] memorable performances" – all without permission – in its game programs and website features. 94 Cal. App. 4th at 410. According to the court, the defendant's works communicated "mere bits of baseball's history" and "fragments from

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

baseball's mosaic." *Id.* Nevertheless, the court found that the "discussion of factual data concerning the athletic performance of these plaintiffs command[s] a substantial public interest, and, therefore, is a form of expression due substantial constitutional protection." *Id.* at 411. In language that applies with even greater force to the information communicated in *American Heroes*, the court observed that "[t]he public has an enduring fascination in the records set by former players and in memorable moments from previous games." *Id.* Rejecting the plaintiffs' argument that the game programs and other works were "commercial speech," the court held that "the public interest favoring the free dissemination of information regarding baseball's history far outweigh[ed] any proprietary interests at stake," and that the First Amendment thus barred the plaintiffs' right-of-publicity claims. *Id.*

Similarly, the court in *Montana* found that the First Amendment barred a right-of-publicity claim arising from a poster commemorating the San Francisco 49ers' Super Bowl victories, which featured a photograph of quarterback Joe Montana. 34 Cal. App. 4th at 795-798. Although the defendant-newspaper sold copies of the poster, the court concluded that it was a "form of public interest presentation to which [First Amendment] protection must be extended." *Id.* at 795. The court also reiterated that the public-interest test "is not restricted to current events but may extend to the reproduction of past events." *Id.* at 793.

The court reached the same result in *C.B.C. Distribution*, where the plaintiff offered online fantasy-baseball games that incorporated Major League Baseball players' actual names, nicknames, likenesses, signatures, pictures, statistics, and other biographical information. 505 F.3d at 823. The plaintiff initially licensed this information from the Players Association. *Id.* at 821. But when the Association declined to renew the license, the plaintiff sought a judicial declaration that it had a First Amendment right to use the information without a license. *Id.* The Eighth Circuit agreed, holding that the First Amendment protected the plaintiff's right to use athletes' names, likenesses, and other information in an online game. As the

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

court declared, "the information used in CBC's fantasy baseball games is all readily available in the public domain" – as the Visor Shot is – "and it would be strange law that a person would not have a first amendment right to use information that is available to everyone." *Id.* at 823. On those grounds, the court held that the First Amendment "trump[ed]" the players' right of publicity. *Id.* at 822-824.[4]

This constitutional public-interest defense, *which Plaintiffs do not even address in their motion*, prevents them from showing any likelihood of prevailing.[5] As discussed above, *American Heroes* is an expressive work that communicates information about individuals and events in our nation's history, including Aldrin and the space program. Exs. A-J. Plaintiffs acknowledge that Aldrin's achievements as an astronaut command substantial public interest (Compl. ¶¶ 9-13) – they apparently just want to get paid whenever someone uses his name or likeness in an expressive work about American history (or on the cover of such a work) (*see* Compl. Ex. 6; Ex. T)). But the First Amendment does not give Aldrin or any other public figure that right. Just as the public-interest defense bars right-of-publicity claims arising from the use of an athlete's name and likeness in a game program, on a poster, or in a fantasy game, so, too, does it bar Aldrin's claims here.[6]

---

[4] In another recent online fantasy-sports case, the court found that the defendant's use of professional athletes' names, statistics, pictures, images, and biographical information "comes within the ambit of the First Amendment," and dismissed the athletes' right-of-publicity claim. *CBS Interactive v. NFL Players Ass'n*, 259 F.R.D. 398, 417-418 (D. Minn. 2009).

[5] Plaintiffs' motion fails to address three arguments that Topps raised during the Local Rule 7-3 conference regarding Topps' special motion to strike: the public-interest defense, the *Rogers/Restatement* test, and the actual-malice test.

[6] The use of Aldrin's "cut signature" independently is protected by the first-sale doctrine, which applies to right-of-publicity claims. *See Wendt v. Host Int'l*, 197 F.3d 1284, 1287 n.7 (9th Cir. 1999) (Kozinski, J. dissenting) (citing *Allison v. Vintage Sports Plaques*, 136 F.3d 1443, 1447-1449 (11th Cir. 1998)). Just as Aldrin could not prevent the resale of a poster that he autographed, he cannot bar Topps' single use of a "cut signature" that it obtained from another document and did not reproduce.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

**b.     Civil Code Section 3344(d)**

Plaintiffs correctly observe that courts within the Ninth Circuit have not considered the application of Section 3344(d)'s "public affairs" exemption to trading cards. Motion at 2, 14-16. But they fail to cite any relevant case law to show why the exemption should not apply to *American Heroes* or to any other form of expression that communicates information about "public affairs." The linchpin of Plaintiffs' argument is a *tentative* ruling from *Conrad, Aldrin, Irwin v. Actions Products*, Case No. SA CV 99-1223 DOC (ANx), where the court rejected a toy manufacturer's Section 3344(d) defense in a single sentence. Motion at 16; Cannon Decl., Ex. E at 7. That ruling has no precedential value, and is distinguishable because it involved the alleged use of Aldrin's likeness in the marketing of a toy – a functional, non-expressive item – not in an expressive work like *American Heroes*.

Plaintiffs' reliance on the Second Circuit's nearly 60-year-old opinion in *Haelan Laboratories v. Topps Chewing Gum, Inc.*, 202 F.2d 866 (2nd Cir. 1952), also is misplaced. In 1952, Topps was primarily a chewing-gum company, not a publisher of expressive works about American history or other subjects. *Id.* at 868. *See also* Sapir Decl. ¶ 2. *Haelan* involved allegations that Topps Chewing Gum induced a baseball player to breach a contract granting the plaintiff, another chewing-gum manufacturer, the exclusive right to use his image to market gum. *Id.* at 868. *Haelan* did not address a First Amendment or statutory defense to a right-of-publicity claim, much less California Civil Code § 3344(d). In fact, it did not even concern a right-of-publicity claim. *Haelan* thus has little, if any, weight here.[7]

---

[7] To the extent that Plaintiffs cite *Haelan* to suggest that trading cards are not entitled to constitutional protection, the Second Circuit's more recent authority is to the contrary. In *Eclipse Enterprises v. Gulotta*, 134 F.3d 63, 66-68 (2d Cir. 1997), the Second Circuit held that a regulation banning the sale of "crime trading cards" violated the First Amendment. The court noted that "there has been no showing why trading cards should be singled out for regulation in preference to other material that is no less noxious," such as certain "books found in the County library." *Id.* at 68.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Next, Plaintiffs attempt to bolster their Section 3344(d) argument by criticizing *Cardtoons*, which involved Oklahoma's – not California's – right-of-publicity statute. Although *Cardtoons* has nothing to do with Section 3344(d), Plaintiffs note that the California Supreme Court observed that the Tenth Circuit's decision "contained dicta calling into question the social value of the right of publicity." Motion at 15 (citing *Comedy III Prods., v. Gary Saderup*, 25 Cal. 4th 387, 406, 106 Cal. Rptr. 2d 126 (2001)). So what? Even Plaintiffs admit that the *Comedy III* court found "unassailable" *Cardtoons'* conclusion that parody trading cards were protected by the First Amendment. *Comedy III*, 25 Cal. 4th at 406.[8]

Conspicuously absent from Plaintiff's motion is any actual case law interpreting Section 3344(d). This omission is telling. Under California law, it is well-settled that Section 3344(d)'s "public affairs" exemption affords *even broader* protection against right-of-publicity claims than the First Amendment does. As the Ninth Circuit has stressed, the statutory exemption "is designed to avoid First Amendment questions in the area of misappropriation by providing *extra breathing space* for the use of a person's name in connection with matters of public interest." *New Kids on the Block v. News America Publ'g*, 971 F.2d 302, 310 n.10 (9th Cir. 1992) (emphasis added). Both the Ninth Circuit and the California Supreme Court have held that Section 3344(d) provides a complete defense to statutory and common-law right-of-publicity claims. *Id.* at 309-310; *Eastwood v. Superior Court*, 149 Cal. App. 3d 409, 421, 198 Cal. Rptr. 342 (1983).

Consistent with the legislative purpose, courts have interpreted the "public affairs" exemption expansively, and have recognized that it applies to a variety of media. In *Dora v. Frontline Video*, for example, the court held that the exemption

---

[8] Immediately following its discussion of *Cardtoons*, the *Comedy III* court "emphasize[d] that the transformative elements or creative contributions that require First Amendment protection are *not confined to parody* and can take many forms, from factual reporting ... to fictionalized portrayal ..., from heavy-handed lampooning ... to subtle social criticism[.]" *Id.* (emphasis added).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

protected a documentary film about early surf culture. 15 Cal. App. 4th 536, 545-546 (1993). Noting that "Civil Code section 3344, subdivision (d) distinguishes between news and public affairs," the court held that "the Legislature intended that the category of public affairs would include things that would not necessarily be considered news." *Id.* at 545. Because "the public is interested in and constitutionally entitled to know about things, people, and events that affect it," the court concluded that "we cannot limit the term 'public affairs' to topics that might be covered on public television or public radio." *Id.* at 546. Turning to the defendants' film, the court observed that "surfing … has created a lifestyle that influences speech, behavior, dress, and entertainment," and "has also had a significant influence on the popular culture[.]" *Id.* For those reasons, the court found that early surf culture satisfied the public-affairs test, and that the film was exempt from liability under Section 3344(d).

Later, in *Montana*, the court found that the defendant's poster about professional football related to "public affairs" within the meaning of Section 3344. *Montana*, 34 Cal. App. 4th at 801. And in *New Kids*, the Ninth Circuit endorsed this broad application of "public affairs" in holding that Section 3344(d) defeated right-of-publicity claims by members of a then-popular boy band against publications that used their names and images in connection with 900-number telephone polls asking fans to vote for their favorite band member. 971 F.2d at 310.

Like the works in *Dora*, *Montana*, and *New Kids*, *American Heroes* easily falls within the public-affairs exemption. Section 3344(d) thus precludes Plaintiffs from showing a likelihood of success on the merits.

### c.   The Transformative-Use Test

In *Comedy III*, the California Supreme Court announced a "transformative-use test" as one means of determining whether the First Amendment protects the use of a celebrity's image in an expressive work. 25 Cal. 4th at 406. "The inquiry," which applies equally to statutory and common-law right-of-publicity claims, "is

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

whether the celebrity likeness is one of the raw materials from which an original work is synthesized, or whether the depiction … of the celebrity is the very sum and substance of the work in question." *Id.* "[I]n other words," a court must evaluate whether the work "containing a celebrity's image is so transformed that it has become primarily the defendant's own expression rather than the celebrity's likeness." *Id.*[9]

Plaintiffs argue that *American Heroes* is not transformative because Topps used a "literal depiction" of Aldrin. Motion at 19. However, the proper focus for a court applying the transformative-use test is *not* whether the plaintiff's name or likeness has been transformed physically in the defendant's work. Nor could it be; if that were the test, then the use of a plaintiff's name or realistic likeness *never* would be protected. Instead, a court must determine whether the defendant's work "contain[s] significant creative elements that transform [it] into something more than mere celebrity likenesses." *Id.* As the Ninth Circuit recently explained, "[t]he potential reach of the transformative use defense is broad. The form of the expression to which it applies '[is] not confined to parody and can take many forms[.]'" *Hilton*, 599 F.3d at 908 (quoting *Comedy III*, 25 Cal. 4th at 406). The California Supreme Court has made clear that transformative uses may include, but are not limited to, "factual reporting," "fictionalized portrayal," "heavy-handed lampooning," and "subtle social criticism." *Comedy III*, 25 Cal. 4th at 406; *Winter*, 30 Cal. 4th at 888. To underscore that point, the court specifically has stated that the transformative-use test would protect works that use a real-life person's actual name or literal image, including a biography of Howard Hughes and a docudrama about Rudolph Valentino. *Comedy III*, 25 Cal. 4th at 406 (citations omitted).

---

[9] In *Hilton*, the Ninth Circuit recognized that the transformative-use test is not the only relevant test for balancing the First Amendment and California's right of publicity. *Hilton*, 599 F.3d at 909 n.11. In assessing constitutional protections, courts also may apply the public-interest test and potentially other tests, as well. *Id.*

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

In *ETW Corp. v. Jireh Publ'g*, 332 F.3d 915, 938 (6th Cir. 2003), the Sixth Circuit found that a work featuring "a literal depiction" of Tiger Woods playing golf at The Masters, with several former champions rendered in the background, was transformative as a matter of law. Under Aldrin's view, the fact that Woods was depicted literally – with the same facial features, hitting the ball right-handed, and wearing his familiar black pants, red shirt, and Nike cap, and in a setting in which he appeared in real life, the Augusta National Golf Club – would dictate that the use was not protected. Yet, the Sixth Circuit found "that [the defendant's] work does contain significant transformative elements which make it especially worthy of First Amendment protection," and that even though Woods' image dominated the foreground of the painting, the work "consist[ed] of much more than a mere literal likeness of Woods." 332 F.3d at 938. "Unlike the unadorned, nearly photographic reproduction of the faces of The Three Stooges in *Comedy III*," the court explained that the "work does not capitalize solely on a literal depiction of Woods. Rather, [the] work consists of a collage of images in addition to Woods' image which are combined to describe, in artistic form, a historic event in sports history[.]" *Id.*

Similarly, *American Heroes* is much more than a "mere celebrity likeness[]" of Aldrin; his identity is just one of the "raw materials" from which Topps has created its work. A simple review of *American Heroes* discredits Plaintiffs' remarkable assertion that "[t]he value of the Cards is based primarily on the fame of Dr. Aldrin and not on any other significant element." Motion at 12. Indeed, *American Heroes* depicts and describes not only Aldrin, but scores of other figures in American history, ranging from famous individuals like Ben Franklin, Thomas Jefferson, Eliot Ness, Ty Cobb, and Wyatt Earp, to lesser-known (but equally worthy) individuals as Dean Acheson, John Hay, Emma Willard, Jane Addams, and Norman Shumway. Sapir Decl. ¶ 10; Exs. H-I. Because Aldrin's name and likeness are not even remotely the "sum and substance" of *American Heroes*, Topps' work also is protected under the transformative-use test.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

### d.    The Rogers/Restatement Test

In *Hilton*, the Ninth Circuit deferred "for another day the question of whether the First Amendment furnishes a defense to misappropriation of publicity that is broader than the transformative use or public interest defenses." *Hilton*, 599 F.3d at 909 n.11.[10] Although this Court need not address that question since Plaintiffs' claims are barred by under any of the constitutional tests discussed above, the *Rogers/Restatement* test also would defeat Plaintiffs' claims.

In *Rogers v. Grimaldi*, 875 F.2d 994, 996-997 (2d Cir. 1988), Ginger Rogers brought right-of-publicity, Lanham Act, and other claims against the producers of the film *Ginger and Fred* – a title that alluded to Rogers' collaboration with Fred Astaire. The film was not about the iconic American performers, but about two fictional Italian singers who made a living imitating the real Ginger and Fred. *Id.* Addressing Rogers' right-of-publicity claim, the court cautioned that such claims pose even greater dangers to free speech than trademark claims do. *Id.* at 1004. "Perhaps for that reason, courts delineating the right of publicity, more frequently than in applying the Lanham Act, have recognized the need to limit the right to accommodate First Amendment concerns." *Id.* Borrowing from its Lanham Act analysis, the court held that the First Amendment would bar the plaintiff's right-of-publicity claim "unless [the use of her name in] the title was '*wholly unrelated*' to the movie or was '*simply a disguised commercial advertisement* for the sale of goods or services." *Id.* at 1004 (emphases added; citations omitted). Applying that test, the court dismissed Rogers' right-of-publicity claim. *Id.* at 1004-1005.

The *Rogers* test is consistent with the *Restatement*, which limits right-of-publicity claims to the appropriation of the commercial value of a person's identity

---

[10] "[T]he federal judiciary is supreme in the exposition of the law of the Constitution[.]" *Cooper v. Aaron*, 358 U.S. 1, 18, 78 S. Ct. 1401, 3 L. Ed. 2d 5 (1958). Where, as here, a federal court is called upon to decide a federal constitutional issue, it is not bound by state-court authority. *See RAR, Inc. v. Turner Diesel*, 107 F.3d 1272, 1276 & n.1 (7th Cir. 1997) (emphasis omitted).

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

TOPPS' OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
DWT 16632738v6 0062840-000009

"for purposes of trade." *Restatement (Third) of Unfair Competition*, § 46. The term "for purposes of trade" ordinarily does not include the use of a person's identity in "news reporting, commentary, *entertainment, works of fiction or nonfiction, or in advertising that is incidental to such uses.*" *Id.* § 47 (emphasis added). The *Restatement* presumes that "use in entertainment and other creative works is permitted," unless "the name or likeness is used solely to attract attention to a work that is *not related to* the identified person." *Id.,* § 47, cmt. C (emphasis added).

In *Seale v. Gramercy Pictures*, 949 F. Supp. 331, 339 (E.D. Pa. 1996), the court applied the *Rogers/Restatement* test to a right-of-publicity claim arising from the use of the name and likeness of a Blank Panther Party leader in a docudrama and book. Echoing *Rogers*, the court concluded that the defendants were "entitled to judgment as a matter of law as to Plaintiff's right of publicity claim insofar as it relates to [the] use of Plaintiff's name and likeness in the film, pictorial history book, and *on the cover of the home video.*" *Id.* (emphasis added). *See also Tyne v. Time Warner*, 901 So. 2d 802, 810 (Fla. 2005) (holding that docudrama featuring real-life individuals was constitutionally protected against right-of-publicity claim).

Under *Rogers*, Plaintiffs cannot show a probability of prevailing. Topps' use of Aldrin's name and likeness certainly is not "wholly unrelated" to the content of *American Heroes*. *See* Compl. ¶ 14 (describing Aldrin as "one of America's greatest heroes"). Nor was Topps' use "a disguised advertisement" for the sale of unrelated goods. Thus, *Rogers* also would compel dismissal of Plaintiffs' claims.

### e.   The Constitutional Actual-Malice Standard

In addition to the constitutional barriers discussed by Topps in its pending special motion to strike, the actual-malice standard also prevents Plaintiffs from establishing a likelihood of prevailing on the merits. In other right-of-publicity cases, courts have recognized that a public figure cannot recover damages for noncommercial speech unless he presents "clear and convincing evidence" of constitutional actual malice – that is, that the defendant acted with "disregard for the

19

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

1 truth" or a "high degree of awareness of probable falsity." *Hoffman*, 255 F.3d at

2 1186; *Eastwood v. Nat'l Enquirer*, 123 F.3d 1249, 1252 (9th Cir. 1997) (same).

3     To the extent Plaintiffs argue that *American Heroes* creates a false inference

4 that Aldrin endorsed the work, they cannot show that Topps was aware of or

5 intended to create any such inference. Perrone Decl. ¶ 3. The astronaut image on

6 the work's cover is a NASA public-domain photograph of the Apollo 11 moon

7 landing that does not show Aldrin's features, and Topps did not identify Aldrin by

8 name on the cover. *Id.* Under these circumstances, Plaintiff cannot show actual

9 malice, much less by the required clear and convincing evidence.

10     Plaintiffs' allegations that Topps has entered into license agreements with

11 Aldrin and/or others does not assist them in establishing actual malice (or in

12 overcoming Topps' other First Amendment defenses). Plaintiffs confuse business

13 decisions with legal obligations. As a business matter, Topps sometimes derives

14 significant benefits – including marketing and promotional cooperation and

15 freedom from nuisance litigation – from its licensing agreements. Second Sapir

16 Decl. ¶ 7. But Topps' decision to enter into a license for a particular work does not

17 restrict its First Amendment rights with respect to other works, as *C.B.C.* confirms.

18 There, a fantasy-baseball operator entered into a license with the players association

19 to use players' names, likenesses, and biographical information in its games. 505

20 F.3d at 821. After the players refused to extend the license, the company won a

21 declaratory judgment that it had a First Amendment right to use the players' names,

22 likenesses, and other information without a license, even though the company

23 previously had paid the players association for the same information. *Id.* at 823. In

24 *Polydoros v. Twentieth Century Fox*, 57 Cal. App. 4th 795, 802 (1997), the court

25 explained that the "the [motion picture] industry custom of obtaining 'clearance'

26 establishes nothing, other than the unfortunate reality that many filmmakers may

27 deem it wise to pay a small sum up front for a written consent to avoid later having

28 to spend a small fortune to defend unmeritorious lawsuits." That admonition

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

applies with particular force here, where Plaintiffs have established a cottage industry of trying to coerce publishers into paying license fees to use Aldrin's name and likeness in expressive works.  The fact that Topps in the past has paid a license fee to Aldrin or anyone else in no way establishes that it *must* do so here.

Because Topps has five separate defenses that defeat Plaintiffs' right-of-publicity and related claims, Plaintiffs cannot establish a likelihood of prevailing on the merits.  Their motion should be denied for that reason alone.

## B.    Plaintiffs Cannot Show A Likelihood Of Irreparable Injury.

Plaintiffs cite only one case addressing irreparable injury:  *Michaels v. Internet Entertainment Group*, 5 F. Supp. 2d 823, 838 (C.D. Cal. 1998).  That case does not assist Plaintiffs.  *First*, in *Michaels*, this Court applied the pre-*Winter* "possibility" of irreparable injury standard, not the "likelihood" of irreparable harm standard that applies here.  *Id.  Second, Michaels* involved an adult website's effort to disseminate an unedited, purloined sex tape made by plaintiffs Bret Michaels and Pamela Anderson.  *Id.* at 828.  The Court made clear that the plaintiffs "do not have an exclusive right to the use of their names and likenesses in the publication of matters of public interest," and that "[t]he injunction may not reach the use of their names or likenesses to report or comment on matters of public interest." *Id.* Consequently, this Court dismissed the plaintiffs' simultaneous right-of-publicity claim against a tabloid television show that used their names and images from the tape in a report about the controversy.  *Michaels v. Internet Entertainment Group*, 1998 U.S. Dist. LEXIS 20786, *3 (C.D. Cal. Sept. 11, 1998).  Topps' use of Aldrin's name and likeness is much closer to the television show's protected use of Michaels' and Anderson's identities than to the adult website's enjoined use.

Nor have Plaintiffs offered any evidence to show a likelihood of irreparable harm – that is, evidence establishing that economic damages would be insufficient to compensate them for Topps' use of Aldrin's name and likeness in *American Heroes* (assuming, solely for the sake of argument, that Plaintiffs had any viable

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

claim against Topps).  It is well-settled that mere economic losses, which are compensable by a damage award, generally do not constitute irreparable harm.  *See, e.g., Sampson v. Murray*, 415 U.S. 61, 90, 94 S. Ct. 937, 39 L. Ed. 2d 166 (1974); *Los Angeles Memorial Coliseum Comm'n v. NFL*, 634 F.2d 1197, 1202 (9th Cir. 1980).  "The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs *heavily* against a claim of irreparable harm."  *Sampson*, 415 U.S. at 90 (emphasis added).  In addition, there must be evidence of actual injury to support claims of "irreparable" harm; speculative losses are insufficient.  *See Goldie's Bookstore v. Superior Court*, 739 F.2d 466, 472 (9th Cir. 1984) (finding plaintiff's alleged loss of goodwill and "untold customers" was speculative).  *Romantics v. Activision Publ'g*, 532 F. Supp. 2d 884 (E.D. Mich. 2008), is on point.  In that case, members of a 1980s band sought to enjoin the marketing and sale of a video game they contended violated their right of publicity.  *Id.* at 890.  Applying the *Winter* standard, the court found that the band failed to establish a likelihood of irreparable harm, because there was no evidence showing that monetary relief would be insufficient.  *Id.*

Here, Plaintiffs complain that they were deprived of a license fee for the use of Aldrin's identity.  Motion at 8-10, 13, 21.  That is, by definition, the kind of economic loss for which they would be able to obtain adequate compensatory damages if they ultimately prevail in this case.  *See, e.g., Romantics*, 532 F. Supp. at 890.  Plaintiffs' assertion that Aldrin "has suffered damages which are difficult to ascertain and quantify" simply cannot be credited, since Plaintiffs themselves have submitted substantial evidence showing that Aldrin regularly enters into licensing agreements that quantify the value of his likeness (Cannon Decl., Exs. C, J, K) and specifically sought to do so here (Terry Decl. ¶ 5 & Ex. B).

Aside from the licensing fee to which Plaintiffs erroneously believe they are entitled, Plaintiffs injury claims are purely speculative.  They provide no facts to support the bald assertions that *American Heroes* has caused "damage to Dr.

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

Aldrin's reputation and goodwill [that] will be irreparable and unquantifiable," that it "will and has caused confusion and deception in the marketplace," or that "defendant is depleting an invaluable asset which cannot be replaced." Motion at 3, 14. Indeed, the notion that a work that identifies Aldrin as an American hero would cause irreparable damage to his reputation is nonsensical. <u>Indeed, his attorney said that "Dr. Aldrin appreciates the thought behind being identified by Topps as an American hero" Terry Decl., Ex. D, p. 10.</u> Topps' use of Aldrin's identity in an expressive work about American history is no more injurious that the widespread use of the Visor Shot or other NASA images of Aldrin on and in books like *Rocket Men*, *The Big Book of American Heroes*, and *The Children's Encyclopedia of American History*. *See* Exs. M-N, T; *see also* Exs. O-S.

Plaintiffs' lengthy delay in seeking an injunction – *17 months* after they allegedly first learned of *American Heroes* – confirms that Plaintiffs have not suffered and will not suffer irreparable harm. The Ninth Circuit has observed that a "[p]laintiff's long delay before seeking a preliminary injunction implies a lack of urgency and irreparable harm." *Oakland Tribune v. Chronicle Publ'g*, 762 F.2d 1374, 1377 (9th Cir. 1985). Thus, courts have found that even a three-month delay in seeking injunctive relief undermined a plaintiff's allegation of irreparable harm. *Valeo Intellectual Prop. v. Data Depth Corp.*, 368 F. Supp. 2d 1121, 1128 (W.D. Wash. 2005). Because Plaintiffs cannot show any possibility – much less the required *likelihood* – of irreparable harm, their motion should be denied.

## C.   The Balance of Equities Favors Topps.

Although Plaintiffs bear the burden of establishing each of the four elements they must satisfy for a preliminary injunction, they completely fail to address the balance-of-the-equities element. Their silence is fatal to their motion.

Even if they had addressed this element, however, the balance of equities plainly favors the denial of their preliminary-injunction motion. The Ninth Circuit has recognized that "[a]ny loss of First Amendment freedoms, even briefly, can

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

constitute irreparable injury." *Lydo Enters. v. Las Vegas*, 745 F.2d 1211, 1214 (9th Cir. 1984).  In *Romantics*, the court found that "issuance of an injunction would injure Defendants in an actual, imminent, and irreparable manner," in part because "[a]n injunction would encroach upon Defendants' First Amendment rights" to disseminate the video game at issue.  532 F. Supp. 2d at 891.  Because the issuance of an injunction here would restrain Topps' First Amendment rights, the balance of equities tips in Topps' favor.

**D.     A Preliminary Injunction Is Not In The Public Interest.**

Plaintiffs also fail to address the fourth element for a preliminary injunction – whether an injunction would be in the public interest.  This element, like the other three, weighs against Plaintiffs.  An injunction would violate Topps' First Amendment rights and thereby harm the public interest.  *See Romantics*, 532 F. Supp. 2d at 891 (holding that injunction would be against public interest because it "would impinge upon the Defendants' First Amendment rights to create works of artistic expression").  Aldrin's heroism as an astronaut does not grant him the right to control, profit from, or enjoin the use of his name or likeness in expressive works about American history.  If his arguments were credited, any former government official or other public figure could demand similar financial tribute, with corrosive effects on the flow of information about matters of great public interest.

**4.     THE INJUNCTIVE RELIEF THAT PLAINTIFFS SEEK WOULD CONSTITUTE AN UNCONSTITUTIONAL RESTRAINT ON SPEECH.**

The injunctive relief requested by Plaintiffs would "freeze," not just chill, Topps' First Amendment rights and would qualify as a "classic example[] of [a] prior restraint[]."  *Alexander v. United States*, 509 U.S. 544, 549, 113 S. Ct. 2766, 125 L. Ed. 2d 441 (1993).  As the United States Supreme Court has made clear, "[t]he thread running through all [our] cases is that prior restraints on speech are the most serious and the least tolerable infringement on First Amendment rights."  *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 559, 96 S. Ct. 2791, 49 L. Ed. 2d 683

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

(1976).  Accordingly, any effort to restrain publication bears an extremely "*heavy presumption against its constitutional validity.*" *New York Times v. United States*, 403 U.S. 713, 713, 91 S. Ct. 2140, 29 L. Ed. 2d 822 (1971) (*per curiam*) (emphasis added) (declining to restrain publication of the so-called "Pentagon Papers" despite the urging of the government that the publication would result in a serious breach of national security).  "[T]his 'most extraordinary remedy'" may be considered "only where the evil that would result from the reportage is both great and certain and cannot be militated by less intrusive measures." *CBS v. Davis*, 510 U.S. 1315, 1318 (1994) (Blackmun, J., in chambers); *see also Procter & Gamble Co. v. Bankers Trust Co.*, 78 F.3d 219, 226-27 (6th Cir. 1996) ("[i]n the case of a prior restraint …, the hurdle is substantially higher; publication must threaten an interest more fundamental than the First Amendment itself"; "the Supreme Court has never upheld a prior restraint, even faced with the competing interest of national security or the Sixth Amendment right to a fair trial").[11]

This is not a case involving the use of Aldrin's name or likeness in an advertisement for a functional, non-expressive item, such as a car or a vacuum cleaner.  Plaintiffs ask this Court to enjoin the dissemination of an expressive work about American history, simply because it includes the name and likeness of an individual who helped shape that history.  Exs. A-J.  Under these circumstances, an injunction would present grave constitutional concerns, and should be denied.

## 5.   CONCLUSION

For these reasons, Topps respectfully requests that the Court deny Plaintiffs' motion for a preliminary injunction.

DATED:  March 25, 2011                    By:_____/s/_____
                                                          Alonzo Wickers IV

---

[11] Plaintiffs provide no authority for their request for an accounting of inventory. *See* Notice of Motion at 2.  Their request also violates the stay of discovery under the anti-SLAPP statute. *See* C.C.P. § 425.16(g).

**DAVIS WRIGHT TREMAINE LLP**
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# DECLARATION

# SECOND DECLARATION OF MARK SAPIR

I, Mark Sapir, hereby declare as follows:

1.      I am not a party to this action, and am over the age of 18 years. Unless expressly stated otherwise, I have personal knowledge of the information set forth in this declaration, and, if called as a witness, I could and would competently testify to the facts set forth below.  I previously submitted a declaration in support of The Topps Company, Inc.'s special motion to strike.

2.      I am employed by defendant The Topps Company, Inc. ("Topps") as Vice President of Marketing for Sports & Entertainment.  Topps was founded in 1938 as Topps Chewing Gum and began including trading cards with its gum in 1950.  Its baseball cards quickly became a vital part of popular culture, a tradition that continues to this day.  Topps also has a rich history of creating a variety of non-sports-themed trading cards, including its parody-based *Wacky Packages* cards, as well as cards devoted to important figures and events in American history such as Operation Desert Storm, the 1969 lunar landing, and the life of President John F. Kennedy.

3.      In my capacity as Vice President of Marketing for Sports & Entertainment, I am responsible for the marketing of trading cards, including *Topps American Heritage: American Heroes Edition* ("*American Heroes*").  I am familiar with Topps' sales and marketing practices for its trading-card sets and am also able to access records maintained in the ordinary course of Topps' business, including with respect to sales of trading-card sets.

4.      Topps generally obtains orders for its trading cards from retailers before their release, and publishes only enough cards to fulfill the orders placed. Once Topps distributes the cards that have been ordered, Topps does not create additional cards of this edition of the release.

5.      I have access to records concerning Topps' sales of *American Heroes*.  Information concerning sales of titles are recorded and maintained in

1

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

the ordinary course of Topps' business.  According to Topps' business records, Topps last distributed *American Heroes* to retailers in August 2009.

6.   I am informed and believe that *American Heroes* is no longer available for sale at major retailers, and may be obtained only in limited quantities through online sales, independent stores, or re-sellers.

7.   As a business matter, Topps derives significant benefits – including marketing and promotional cooperation and freedom from nuisance litigation – from its licensing agreements.

This declaration was executed on March 25, 2011, in New York, New York. I declare under penalty of perjury under the laws of the United States of America, the State of New York, and the State of California that the foregoing is true and correct.

_____
Mark Sapir

2

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# DECLARATION

# DECLARATION OF MATTHEW PERRONE

I, Matthew Perrone, hereby declare as follows:

1.     I am not a party to this action, and am over the age of 18 years. Unless expressly stated otherwise, I have personal knowledge of the information set forth in this declaration, and, if called as a witness, I could and would competently testify to the facts set forth below.

2.     I am employed by defendant The Topps Company, Inc. ("Topps") as a Brand Manager.  Topps creates and distributes a variety of sports and non-sports-themed trading cards, including cards devoted to important figures and events in American history.  In my capacity as brand manager, I am responsible for the development of trading cards, including *Topps American Heritage: American Heroes Edition* ("*American Heroes*").

3.     I was involved in the decision to include astronauts, including Buzz Aldrin, on "Heroes of Spaceflight" themed cards in the set.  I also participated in the decision to use a NASA public-domain photograph of the Apollo 11 moon landing next to images of Abraham Lincoln and Mickey Mantle on the cover of *American Heroes*.  Topps was not aware of and did not intend to create any inference that Buzz Aldrin endorsed *American Heroes*.  The NASA photograph does not show Aldrin's features.  In addition, Topps did not identify Aldrin by name on the cover.

This declaration was executed on March 25, 2011, in New York, New York. I declare under penalty of perjury under the laws of the United States of America and the State of California, the State of New York, that the foregoing is true and correct.

_____
Matthew Perrone

DECLARATION OF MATTHEW PERRONE
DWT 16776367v2 0062840-000009

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

# DECLARATION

# DECLARATION OF ALEXANDER GIGANTE

I, Alexander Gigante, hereby declare as follows:

1.     I am not a party to this action, and am over the age of 18 years. Unless expressly stated otherwise, I have personal knowledge of the information set forth in this declaration, and, if called as a witness, I could and would competently testify to the facts set forth below.

2.     I am an attorney admitted in the State of New York and employed by Penguin Group (USA) Inc. as Senior Vice President for Legal Affairs.

3.     On May 28, 2009, Robert C. O'Brien, Esq., counsel for Dr. Buzz Aldrin, sent a letter to Penguin Group concerning the use of a NASA photograph of Dr. Aldrin on the cover of the book *Rocket Men: The Epic Story of the First Men on the Moon*.  On June 2, 2009, I replied to the letter and thereafter engaged in an email exchange with Dr. Aldrin's counsel.  A true and correct copy of this correspondence is attached as Exhibit T.

This Declaration was executed on the 25th day of March 2011, in New York, NY.  I declare under penalty of perjury under the laws of the United States of America, the State of California, and the State of New York that the foregoing is true and correct.

_____
Alexander Gigante

DAVIS WRIGHT TREMAINE LLP
865 S. FIGUEROA ST, SUITE 2400
LOS ANGELES, CALIFORNIA 90017-2566
(213) 633-6800
Fax: (213) 633-6899

DECLARATION OF ALEX GIGANTE
DWT 16769152v1 0062840-000009

# EXHIBIT T

Arent Fox LLP / Los Angeles, CA / Washington, DC / New York, NY

# Arent Fox

May 28, 2009

**VIA EMAIL**
Paul.Buckley@us.penguingroup.com

Mr. Paul Buckley
Penguin Group (USA) Inc.

Dear Mr. Buckley:

**Robert C. O'Brien**
Attorney
213.629.7400 DIRECT
213.629.7401 FAX
obrien.robert@arentfox.com

REF. 202101.04101

We serve as counsel to Dr. Buzz Aldrin. It has come to our attention that Penguin Group (USA) Inc. ("Viking/Penguin") intends to use the name, likeness, image and identity of Dr. Aldrin on the cover of a new book it plans to sell. A copy of the famous image of Dr. Aldrin on the moon with the American Flag, which we understand is the image Viking/Penguin intends to misappropriate, is enclosed herewith as Exhibit "A."

Dr. Aldrin alone possesses the unfettered right to control the use of his name, likeness, image and identity in connection with the commercial sale of products. This right is well established in both statutory and case law. (See, e.g., California Civil Code section 3344. See also Comedy III Productions, Inc. v. Gary Saderup, Inc., 25 Cal.4th 387 (2001), Newcombe v. Adolf Coors Co.,157 F.3d 686 (9th Cir. 1998), White v. Samsung Electronics, 871 F.2d 1295 (9th Cir. 1992) and Motschenbacher v. R.J. Reynolds Tobacco Co., 498 F.2d 821 (9th Cir. 1974).)

Viking/Penguin has, however, never received authorization from Dr. Aldrin or his representatives to use his name, likeness, image or identity on its new book. The license Dr. Aldrin granted Penguin for the use of the famous "visor shot" of Dr. Aldrin on the moon for the cover of the book "A Man on the Moon," by Andy Chaikin, was limited to use on the cover of that particular book and for use on an in-store header card. Use of the image of Dr. Aldrin on Viking/Penguin's books, other than pursuant to the parties' specific agreement otherwise, is intended to create, and undoubtedly creates, the misleading and false impression among consumers that Dr. Aldrin has provided a license to or endorses Viking/Penguin's other products and services.

By misappropriating Dr. Aldrin's name, likeness, image and identity, Viking/Penguin has deprived Dr. Aldrin of his fundamental right to control how he is depicted in connection with the sale of commercial goods and services and to benefit from such activity. Indeed, Dr. Aldrin has specifically licensed his name, likeness, image and identity for use in products by numerous other companies worldwide, including, as noted above, for the cover of the book "A Man on the Moon," as well as for other book covers, including "Giant Leaps" (Macmillan, 2006) published

LA/157709.1

SMART IN YOUR WORLD®

555 West Fifth Street, 48th Floor
Los Angeles, CA 90013-1065
T 213.629.7400   F 213.629.7401

1050 Connecticut Avenue, NW
Washington, DC 20036-5339
T 202.857.6000   F 202.857.6395

1875 Broadway
New York, NY 10019-5820
T 212.484.3900   F 212.484.3990

Mr. Paul Buckley
Penguin Group (USA) Inc.
May 28, 2009
Page 2

# Arent Fox

in collaboration with the Science Museum, and the children's reference book, "Mission to the Moon" (Weldon Owen, 2008) by Alan Dyer.

Where necessary, Dr. Aldrin has also initiated litigation in court to protect his name, likeness, image and identity from unlawful exploitation and to require offending parties to cease and desist from such activity and to pay him compensation. In fact, Dr. Aldrin has sought injunctions in both federal and state court to stop the unlawful use of his image.

Please find attached as Exhibit "B" an order from the California Superior Court granting a preliminary injunction against a manufacturer who misappropriated Dr. Aldrin's name, likeness and image for use on a product. Additionally, attached as Exhibit "C" is a tentative order from United States District Court granting a preliminary injunction against a Florida toy manufacturer for its unapproved use of the "visor shot" on the packaging of its products. (The tentative order did not become permanent because the parties agreed to enter into a settlement agreement rather than proceed under the injunction.) Finally, attached as Exhibit "D" is the Trials Digest report covering the recent settlement of a case in which another astronaut's image was used on product packaging. You should be aware that the reported $50,000 settlement amount was significantly increased by the confidential settlement paid by the product manufacturer.

In this instance, Dr. Aldrin would like to resolve the matter with Viking/Penguin on an amicable basis as he has with the company in the past, and also in view of his current relationship with Penguin Young Readers for the 2009 publication of his illustrated children's book, "Look to the Stars." Accordingly, we propose licensing the use of Dr. Aldrin's image to Viking/Penguin for use on the book for a fee of $5,000. This fee is far below the amount required for advertising uses and is consistent with other book cover and CD cover licenses that Dr. Aldrin has granted in the past.

You will understand, of course, that this letter is not intended to serve as an exhaustive recital of all or Dr. Aldrin's claims against Viking/Penguin and we specifically reserve all of his rights and remedies in the event that the parties are unable to settle this matter.

Thank you in advance for your cooperation. I look forward to speaking with you soon.

Very truly yours,

Robert C. O'Brien

RCO:dgb

LA/157709.1



Penguin Group (USA)

375 Hudson Street, New York, NY 10014-3658

Telephone (212) 366 2959   Fax (212) 366 2867   alex.gigante@us.penguingroup.com

Alexander Gigante
SENIOR VICE PRESIDENT
LEGAL AFFAIRS / CORPORATE COUNSEL

June 2, 2009

**VIA EMAIL**

Robert C. O'Brien, Esq.
Arent Fox LLP
555 West Fifth Street, 48th Floor
Los Angeles, California 90013-1065

Re:   Claim of Buzz Aldrin

Dear Mr. O'Brien:

I am replying to your May 28, 2009 letter sent by email to Paul Buckley, Executive Creative Director of Penguin Group (USA) Inc. ("PGI"), demanding that PGI pay $5,000.00 for permission to use an official NASA photograph of Buzz Aldrin on the moon for the cover of ROCKET MEN: THE EPIC STORY OF THE FIRST MEN ON THE MOON (the "Work"), being published by PGI's Viking division.

It is shocking to see such a letter on the stationery of Arent Fox. The cases that you cite – which all deal with commercial exploitation and merchandizing – are patently inapposite. The Work is a book, not a medallion or a T-shirt. A book is, "without doubt, expression" protected by the First Amendment. *IDK, Inc. v. Clark County*, 826 F.2d 1185, 1195 (9th Cir. 1988).

Nothing changes because PGI will be offering this expressive work for sale. In *Winter v. DC Comics*, 30 Cal.4th 881, 891, 69 P.3d 473, 479, 134 Cal.Rptr.2d 634, 642 (2003), the California Supreme Court held that "trading on plaintiffs' likenesses and reputations to generate interest in the [defendant's] comic book series and increase sales . . . is irrelevant to whether the comic books are constitutionally protected."

Robert C. O'Brien, Esq.
June 2, 2009
Page - 2 -

In *Cardtoons, L.C. v. Major League Baseball Players Association*, 95 F.3d 959, 970 (10th Cir. 1996), *cert. denied*, 531 U.S. 873 (2000), the Court of Appeals rejected the right-of-publicity claim over the use of the defendants' images on parody baseball cards, holding that "[t]he fact that expressive materials are sold neither renders the speech unprotected, . . . nor alters the level of protection under the First Amendment . . ." (citations omitted).

Of course, Mr. Aldrin's "likeness" is not even recognizable in the photograph, nor is there anything in the picture that would lead the viewer to infer that it was Mr. Aldrin in the spacesuit, rather than any other moon-walking Apollo astronaut. Thus, PGI's use is not like what happened in *Motschenbacher v. R. J. Reynolds Tobacco Co.*, 498 F.2d 821 (9th Cir. 1974), cited in your letter, where the challenged <u>commercial</u> advertisement used an automobile with "markings . . . not only peculiar to the plaintiff's cars but [which] caused some persons to think the car in question was plaintiff's and to infer that the person driving the car was the plaintiff." *Id.* at 827.

In any event, as already stated, PGI's use of the image on the Work's cover is not commercial but expressive. As should be obvious from its title, the Work is an account of the race to the moon, a newsworthy matter of great public interest in which Mr. Aldrin played a critical historical role. An image of Mr. Aldrin on the moon therefore has a direct thematic and editorial connection with the Work's subject matter. Section 3344 of the California Civil Code – which creates the statutory right of publicity – recognizes in subsection (d) that the publicity right must yield to this kind of expressive use to reconcile the statute with the First Amendment. *New Kids on the Block v. News American Publishing, Inc.*, 971 F.2d 302, 310 n. 10 (9th Cir. 1992). Thus, Section 3344(d) expressly exempts PGI's intended use, namely, "a use of a name . . . or likeness in connection with any news, [or] public affairs . . . account . . . ."[1]

The foregoing discussion demonstrates that even as a private citizen, Mr. Aldrin's right of publicity would not entitle him to demand compensation for use of his image on the cover of the Work. It should be noted, however, that the image in issue depicts Mr. Aldrin fulfilling an official mission of the United States government while in its employ. It is questionable whether, as a former employee, Mr. Aldrin ever could claim any rights in an official NASA photograph documenting that mission. Moreover, aside from the fact that as an employee of the U.S. government, he likely waived his rights,

---

[1] In New York, *see, e.g.*, *Arrington v. New York Times*, 55 N.Y.2d 433, 440, 434 N.E.2d 1319, 1322, 449 N.Y.S.2d 941, 944 (1982), *cert. denied*, 459 U.S. 1146 (1983): "[a] picture illustrating an article on a matter of public interest is not considered used for the purposes of trade or advertising within the prohibition of the statute [NY Civil Rights Law §51] * * * unless it has no real relationship to the article * * * or unless the article is an advertisement in disguise . . ." (citations omitted).

Robert C. O'Brien, Esq.
June 2, 2009
Page - 3 -

allowing him to assert a right of publicity as a private citizen would negate the public policy behind Section 105 of the Copyright Act, which makes all U.S. government publications public domain material freely available to all.   Indeed, if Mr. Aldrin's position were legally correct, former President Bush now could demand a fee every time his image in official government photographs is used on or in a book.  That cannot be the law.

In sum, PGI will not pay Mr. Aldrin anything to use the NASA image on the cover of the Work.  If, as you threaten, Mr. Aldrin pursues this matter in the courts, his action will be foolhardy.  For one thing, he apparently has been collecting these fees for use of his image for some time.  That business opportunity will end for him once it becomes publicly known that his position is legally baseless.  For another, as the legal principles are well-established, any such lawsuit would be objectively unreasonable. PGI accordingly would seek all appropriate sanctions against Mr. Aldrin for pursuing such frivolous litigation.

Sincerely,

AG/slf

cc:    Mr. Paul Buckley

**Gigante, Alex**

| | |
|---|---|
| **From:** | Gigante, Alex |
| **Sent:** | Tuesday, June 02, 2009 1:39 PM |
| **To:** | 'O'Brien, Robert'; Bayles, David |
| **Cc:** | Buckley, Paul |
| **Subject:** | RE: Claim of Buzz Aldrin |

This exchange reminds me of the famous Strother Martin line in Cool Hand Luke: "What we have here is failure to communicate." (You add the Southern accent.) We are not paying a license fee. You can serve papers at 3rd Floor, 375 Hudson Street, NY NY 10014.

---

**From:** O'Brien, Robert [mailto:obrien.robert@arentfox.com]
**Sent:** Tuesday, June 02, 2009 1:35 PM
**To:** Gigante, Alex; Bayles, David
**Cc:** Buckley, Paul
**Subject:** RE: Claim of Buzz Aldrin

Dear Alex,

I appreciate your note. I would be willing to discuss with you the payment of a reasonable license fee for the use of the image as Penguin has paid Dr. Aldrin under the same circumstances in the past. I believe that we can come to a business like resolution of the matter. Using Dr. Aldrin's image on the cover of a book to drive sales of the book certainly constitutes a commercial use as Penguin recognized in the past when it licensed Dr. Aldrin's image for Mr. Chaiken's book. The fact that there are thousands of images of the moon, rockets, etc. available to your marketing department and Penguin decided to use an image for the cover that is regularly licensed by Dr. Aldrin for significant revenue cannot be a coincidence. The fact that you insist on using the image and not replacing it with another after having received our letter confirms the fact.

Of course, as you noted in your letter to me, litigation carries risks for the parties, not just for Dr. Aldrin, but for your company as well, as Penguin's practice of using images without permission may be implicated. If you are not interested in working out a reasonable business resolution of the matter and our client decides to proceed to litigation, will you accept service on behalf of Penguin?

Let me know on both fronts.

Best,
RCO

**Robert C. O'Brien**

**Arent Fox**|555 West Fifth Street 48th Floor| Los Angeles, CA 90013
**Smart in your world®**
T 213.629.7400
F 213.629.7401
obrien.robert@arentfox.com

This e-mail, and any attachments hereto, is intended only for use by the addressee(s) named herein and may contain legally privileged and/or confidential information. If you are not the intended recipient of this e-mail, you are hereby notified that any dissemination, distribution or copying of this e-mail, and any attachments thereto, is strictly prohibited. If you have received this e-mail in error, please immediately notify me by e-mail (by replying to this message) or telephone (above) and permanently delete the original and any copy of any e-mail and any printout thereof. Thank you for your cooperation.

6/2/2009

---

**From:** Gigante, Alex [mailto:Alex.Gigante@us.penguingroup.com]
**Sent:** Tuesday, June 02, 2009 10:14 AM
**To:** O'Brien, Robert; Bayles, David
**Cc:** Buckley, Paul
**Subject:** RE: Claim of Buzz Aldrin

To repeat, we are not paying anything. NASA's policy applies to "use for commercial purposes [that] may infringe a right of privacy or publicity and permission should be obtained from the recognizable person." This is not a commercial purpose and Mr. Aldrin is not recognizable in any event.

And I am astounded that you would say this case is straightforward. Find me one case in NY or CA, federal or state, holding that an editorially relevant photograph on or in a non-fiction book is a commercial use.

This is not a matter of how much we pay Mr. Aldrin. This is a matter of principle. We publish hundreds of non-fiction books each year, and use thousands of photos of public and private figures w/o permission, because they are newsworthy images related to the book's subject matter. We are not going to make an exception for Mr. Aldrin or anyone else just because they complain more.

---

**From:** O'Brien, Robert [mailto:obrien.robert@arentfox.com]
**Sent:** Tuesday, June 02, 2009 1:05 PM
**To:** Gigante, Alex; Bayles, David
**Cc:** Buckley, Paul
**Subject:** RE: Claim of Buzz Aldrin

Dear Mr. Gigante,

Thank you for your letter. Given the tone of your letter and analysis, my assumption is that you are unfamiliar with NASA's policies on right of publicity, California cases involving Dr. Aldrin and other astronauts or even your own company's past payment of a license fee to Dr. Aldrin to use his image on the cover of one of its books. Since you mentioned it your letter (I think as a backhanded compliment), you are likely aware that Arent Fox has probably handled more right of publicity cases on both the prosecution and defense side of the bar than any firm in the country -- with an unparalled record of success. While every case is different and we do not guaranty success, we feel that this one is pretty straight-forward. Nevertheless, as I noted in my letter, Dr. Aldrin has a strong preference for resolving these matters without resort to litigation. We would be willing to license the image to Penguin on very reasonable terms. If you have time and would like to discuss the matter, please give me a call.

Best regards,
RCO

**Robert C. O'Brien**

**Arent Fox** | 555 West Fifth Street 48th Floor| Los Angeles, CA 90013
**Smart in your world®**
**T** 213.629.7400
**F** 213.629.7401
obrien.robert@arentfox.com

This e-mail, and any attachments hereto, is intended only for use by the addressee(s) named herein and may contain