O

JS - 6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. BUZZ ALDRIN and STARBUZZ, LLC, a California limited liability company,<br><br>    Plaintiffs,<br><br> v.<br><br>TOPPS COMPANY, INC., a Delaware corporation,<br><br>    Defendant.<br>_____ | ) Case No. CV 10-09939 DDP (FMOx)<br>)<br>)<br>) **ORDER GRANTING SPECIAL MOTION TO**<br>) **STRIKE COMPLAINT**<br>)<br>)<br>)<br>) [Motion filed on 3/4/11]<br>)<br>)<br>)<br>) |

 Presently before the court is Defendant Topps Company, Inc. ("Topps")'s Special Motion to Strike Plaintiffs' Complaint. Having reviewed the parties' moving papers and heard oral argument, the court grants the motion and adopts the following order.

**I. Background**

 In 2009, Topps released a trading card set entitled "Topps American Heritage: American Heroes Edition" (the "set of cards"). The set of cards includes hundreds of images of well-known American politicians, actors, athletes, scientists, organizations,

artifacts, and events.  The cards also display, on the reverse face of the cards, historical information related to the image displayed on the front of the cards.

The set of cards features several themes, including "Heroes of Sport," "Medal of Honor," and "Heroes of Spaceflight."  The "Heroes of Spaceflight" theme includes several types of cards.  Twenty-eight of thee cards depict various National Aeronautics and Space Administration ("NASA") missions.  These cards depict images of NASA vehicles and mission patches.  Many of the mission patches include the surnames of the respective mission's crew members.  The reverse faces of the cards describe the various NASA missions.  The Gemini XII card, for example, lists the Gemini XII mission dates, crew, and launch site.  The card also gives the following historical description:

> Astronauts had operated outside the spacecraft before, but astronaut Buzz Aldrin's smooth, multi-tasking 140-minute space walk outside of Gemini XII was what finally confirmed NASA's highes hopes for extra-vehicular astronaut activity.  Gemini XII's flawless, computer-guided re-entry marked the end of Project Gemini; America was ready to shoot for the moon.

Other themed cards depict NASA mission fabric patches, various spacecraft, and rare "Heroes of Spaceflight Relics" and "Heroes of Spaceflight Cut Signatures," which contain original astronaut signatures cut from other documents.

The set of cards is packaged in cardboard boxes bearing three images: an image of Abraham Lincoln (captioned "Abraham Lincoln"), an image of Mickey Mantle (captioned "Mickey Mantle," and an image of "arguably the world's most famous space-related photo", the "Visor Shot" (captioned "Moon Landing Apollo 11").  The "Visor Shot" is an image of an astronaut in a white space suit.  The

1  astronaut's helmet visor obscures the astronaut's face, and
2  reflects an image of another astronaut alongside a lunar landing
3  module.  Close inspection of the image reveals that the spacesuit
4  bears the name "E.Aldrin."  The parties agree that the image is
5  NASA's "Visor Shot" photograph of Buzz Aldrin, taken by Neil
6  Armstrong during the Apollo 11 moon landing.
7       On December 27, 2010, Plaintiffs (hereinafter "Aldrin")
8  filed suit in this court alleging violations of their common law
9  and statutory rights to publicity, unfair business practices under
10 California Business and Professions Code § 7200, and unjust
11 enrichment.  The complaint alleges improper uses of Aldrin's name,
12 image, and likeness with respect to the "Visor Shot" image on the
13 cardboard box, the Gemini XII card (described above), and the Buzz
14 Aldrin "cut signature" card (collectively, "the images").  Topps
15 now specially moves to strike Aldrin's complaint under California
16 Code of Civil Procedure § 425.16.
17 **II.  Legal Standard**
18      Under California's anti-SLAPP (Strategic Lawsuits Against
19 Public Participation) statute, "[a] cause of action against a
20 person arising from any act of that person in furtherance of the
21 person's right of petition or free speech . . . in connection with
22 a public issue shall be subject to a special motion to strike
23 unless the court determines that the plaintiff has established
24 that there is a probability that the plaintiff will prevail on the
25 claim."  Cal. Cod. Civ. Pro. § 426.16(b)(1).  In examining a
26 special motion to strike, courts must first determine "whether the
27 defendant has made a threshold showing that the challenged cause
28 of action is one arising from protected activity."  Navellier v.

3

1  <u>Sletten</u>, 29 Cal.4th 82, 88 (2002).  The court must then, crediting
2  the plaintiff's evidence, determine whether plaintiff has
3  demonstrated a probability of success.  <u>Id</u>. at 89.  If the cause
4  of action does arise from protected activity, and the plaintiff
5  cannot show that a complaint is 1) legally sufficient and 2)
6  supported by a prima facie showing of facts, the cause of action
7  is properly stricken under the anti-SLAPP statute.  <u>Id</u>.

**III.  Discussion**

Topps bears the burden of making a threshold showing that its use of the images arise from protected activity.  <u>Id</u>. at 88. Topps argues that its use of the images is an exercise of its right to free speech on an issue of public interest.  (Mot. at 10).  Aldrin contends that Topps use of the images is unprotected commercial speech.  The court agrees with Topps that its activity is protected.

The incorporation of a prominent person's name or likeness in a commercial product can constitute protected expression. <u>Gugliemi v. Spelling-Goldberg Prods.</u>, 25 Cal. #d 860, 875 n.21 (1979).  "An expressive activity does not lose its constitutional protection because it is undertaken for profit."  <u>Comedy III Prods., Inc. v. Gary Saderup, Inc.</u>, 25 Cal.4th 387, 396 (2001) (alterations and quotation marks omitted).  As the Ninth Circuit has noted, "the core notion of commercial speech is that it does no more than propose a commercial transaction," and simply advertises something for business purposes.  <u>Hilton v. Hallmark Cards</u>, 599 F.3d 894, 905 n.7 (9th Cir. 2010) (quotations omitted). The mere fact that a product is sold for a profit does not render the product commercial speech.  <u>Id</u>.

4

1     Aldrin points to several examples of commercial speech.  In
2 Yeager v. Cingular Wireless LLC, for example, the defendant
3 advertised that "Nearly 60 years ago, the legendary test pilot
4 Chuck Yeager broke the sound barrier and achieved Mach 1.  Today,
5 Cingular is breaking another kind of barrier with our MACH 1 and
6 MACH 2 mobile command centers."  Yeager v. Cingular Wireles LLC,
7 673 F.Supp.2d. 1089, 1095 (E.D. Cal. 2009).  The court found that
8 the statement constituted commercial speech because it had no
9 informative purpose other than to create positive associations
10 with a brand and used Chuck Yeager's identity to promote an
11 unrelated product.  Id. at 1098-99.  Similarly, in Abdul Jabbar v.
12 General Motors Corp., the Ninth Circuit found that a defendant
13 engaged in unprotected commercial speech where it used a
14 basketball star's name and accomplishments, without permission, to
15 promote a car.  Abdul Jabbar v. General Motors Corp., 85 F.3d
16 407, 413, 416 (9th Cir. 1996).

17     Contrary to Aldrin's assertions, Topps' use of the images is
18 not analogous to the commercial speech in Yeager and Abdul Jabbar.
19 In those cases, the names of the individuals were linked to
20 products that bore no relationship to those individuals or their
21 activities, and conveyed no message other than information about
22 the unrelated products.  Here, in contrast, the cards use Aldrin's
23 name in the course of conveying information about his historically
24 significant achievements.  Furthermore, the cards propose no
25 commercial transaction, and are not advertisements for any
26 product, let alone an unrelated product.  Rather, as in Hilton,
27 the speech is the product, and is protected.  See Hilton, 599 F.3d
28 905 n.7 (noting that a greeting card bearing a celebrity's

1  likeness was a product rather than an advertisement, and was
2  protected).  To the extent that the "Visor Shot" image on the
3  cards' cardboard packaging constitutes an advertisement, it is a
4  "mere adjunct" to the cards themselves, and is also protected.
5  See Guglielmi, 25 Cal.3d at 862-3 ("It would be illogical to allow
6  respondents to [engage in protected activity] but effectively
7  preclude any advance discussion or promotion of their lawful
8  enterprise."); See also William O'Neil & Co., Inc. v. Validea.com
9  Inc., 202 F.Supp.2d 1113, 1119 (C.D. Cal. 2002) (holding book
10 cover to be "mere adjunct" of protected book and listing cases).[1]

   Because Topps has met its burden to demonstrate that Aldrin's claim arises out of protected speech related to a public issue, the burden now shifts to Aldrin to show a likelihood of success. Navellier, 29 Cal.4th at 89.  Aldrin has not met this burden.  His arguments regarding the legal sufficiency of his claim are premised on the contention that Topps's use of the images constitutes unprotected commercial speech.  (Mot. at 19).  As discussed above, the images are not commercial speech, and have been utilized in furtherance of Topps' First Amendment rights. Accordingly, Aldrin has not shown that his complaint has merit.

///
///
///

---

[1] Aldrin appears to contest the "public issue" element of the anti-SLAPP statute only with respect to the "Visor Shot." (Mot. at 15:25-6.)  As discussed above, however, the "Visor Shot" is a mere adjunct to the protected cards themselves.

6

**IV. Conclusion**

    For the reasons stated above, Defendant's Special Motion to Strike is GRANTED.  Plaintiff's Motion for a Preliminary Injunction is DENIED as moot.  In addition, the Scheduling Conference set for December 1, 2011 is vacated.

IS SO ORDERED.

Dated: September 27, 2011

                                     DEAN D. PREGERSON
                                     United States District Judge

7